(47 App. Div. 9.)

PEOPLE ex rel. SHERRILL et al. v. GUGGENHEIMER et al.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

MUNICIPAL CORPORATIONS—MANDAMUS.—OFFICERS—PUBLIC DUTY.

> Laws 1892, c. 481, as amended by Laws 1893, c. 669, authorized the city of Brooklyn to acquire certain property for water supply, and provided that after the property had been condemned a report thereof should be presented to the supreme court for confirmation, and that the order of confirmation should be binding on all parties, and the municipal officers should issue water bonds to pay therefor. By the New York city charter (Laws 1897, c. 378, § 46), duties charged on the common council of Brooklyn are to be exercised by the municipal assembly of New York. *Held*, that the act being for the general welfare, and declared to be for the public interests, and the supreme court having entered a confirmation order as required, mandamus would issue to compel the members of the municipal assembly to issue the necessary bonds provided for.

Appeal from special term, New York county.

Mandamus by the people, on the relation of Henry W. Sherrill and others, against Randolph Guggenheimer and others, members of the municipal assembly of the city of New York. From an order directing the issuance of the writ (59 N. Y. Supp. 913; 61 N. Y. Supp. 961), defendant Joseph Cassidy and three others appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William J. Kelly, for appellants.
J. Hampden Dougherty, for respondents.
Theodore Connoly, for the city of New York.

INGRAHAM, J. This proceeding was commenced by the relators, as taxpayers of the city of New York, upon an order to show cause, directed to the respondents, as members of the municipal council of the city of New York, by which they were required to show cause why a peremptory writ of mandamus should not issue, requiring them, and each of them, forthwith to approve and adopt a resolution theretofore adopted by the board of aldermen for the issue of corporate stock of the city of New York to pay an award made in condemnation proceedings taken pursuant to chapter 481 of the Laws of 1892, and the act amendatory thereof. By the affidavit upon which this proceeding was instituted, it appeared that a proceeding was commenced under chapter 481 of the Laws of 1892, as amended by chapter 669 of the Laws of 1893, to acquire for the city of Brooklyn the use of certain reservoirs, wells, machinery,

pipes, franchises, and other property of the Long Island Water-Supply
Company. The commissioners were duly appointed under said act,
who made an award, as the value of such property to be acquired,
which was duly confirmed by the supreme court.

The act of 1892 (chapter 481, § 12) provides that:

"The proper officers of the city of Brooklyn are hereby authorized and di-
rected to issue and to sell, in the same form and manner as is now provided for
issuing and for selling duly authorized water bonds of said city, water bonds
sufficient to pay the amount, or amounts, directed by the final order to be paid."

The award of the commissioners having been confirmed by the
supreme court, and the order of the court having directed a sum of
money to be paid for the property, the municipal officers of the
city of Brooklyn were required by section 12 of the act before re-
ferred to to issue and sell water bonds of the said city sufficient to
pay the amount directed by the final order to be paid. By the charter
of the city of New York (Laws 1897, c. 378) it is provided that all
the powers or duties conferred or charged upon the common council
of the city of Brooklyn, or upon any board, body, or officer of any
of the municipal and public corporations, or parts thereof, by said
act consolidated with the city of New York as theretofore known
and bounded, were and are to be exercised and performed by the
municipal assembly of the city of New York (section 46); that all
laws or parts of laws theretofore passed creating any debt or debts
of the municipal and public corporations united and consolidated
as aforesaid, or for the payment of such debts, or respecting the
same, should remain in full force and effect, except that the same
should be carried out by the corporation thereby constituted, to wit,
the said city of New York (sections 4, 5); and that whenever it is
lawful for any of the several municipal or public corporations which
thereby became part of the city of New York to issue bonds for
public purposes, but which bonds had not been issued prior to Janu-
ary 1, 1898, it shall be lawful for the said city to issue corporate
stock of said city for the same purpose, and such corporate stock
should be, unless otherwise provided by the charter, issued by the
comptroller only to the extent to which he might be thereunto au-
thorized by resolution by the municipal assembly and the board of
estimate and apportionment. The corporation counsel appeared upon
the argument of this appeal, and insisted that, as he is by the charter
the recognized legal adviser of the municipal assembly, the duty
is imposed upon him to furnish to the municipal assembly, and to
every department, board, and officer of the city, all such advice and
legal assistance as counsel and attorney, in or out of courts, as may
be required by them, or either of them, and that no officer, board,
or department of the city, unless it be therein otherwise especially
provided, should employ any attorney or counsel (Charter, § 255);
that these appellants had no standing in court to separately appear
and be heard upon the application, and had no right to appeal from
an order or judgment of the court directing them, as the municipal
council of the city of New York, to perform an official act. The
relator also insists that the appeal should be dismissed, as under
the charter the councilmen have no right to appear by private coun-

sel, and have thus no right to be heard in opposition to the motion granting the mandamus, and none to appeal from the final order in the proceeding.

As before stated, this proceeding was instituted to require the municipal council, as a branch of the legislative department of the city government, to obey an act of the legislature requiring the city of New York to issue bonds for a public purpose. These appellants, as individuals, had no interest in the proceeding. As public officers, they were required to perform a public duty, and the proceeding was to compel the performance of that public duty. It was the municipal council as a body that was before the court, and it was the official acts of such municipal council that the court was asked to control; and, while the writ necessarily ran to each individual member of the council, it was directed to him as a member of the council, and in his public capacity as one of the council of the city of New York. By the charter (section 255) it is expressly provided that the corporation counsel shall be the legal adviser of the mayor, the municipal assembly, and the various departments, boards, and officers; and it was his duty to furnish to the municipal assembly, and to every department, board, and officer of the city, all such legal advice and legal assistance as counsel and attorney, in or out of court, as might be required by them, or either of them. It thus became the duty of the counsel to the corporation to appear for the municipal assembly, or either of its branches, or its members, when proceeded against as members of either of such bodies, as their attorney and counsel; and the section of the charter then continues, "No officer, board or department of the city, unless it be herein otherwise especially provided, shall have or employ any attorney or counsel." It would seem that under this express legislative declaration these public officers, when proceeded against in their official capacity, must be represented in court by the corporation counsel, and are expressly prohibited from appearing by any other attorney or counsel, and any such appearance was unauthorized. It appears from the order that this objection was expressly taken in the court below, as it is there stated, "And William J. Kelly, Esq., having been heard ex gratis on behalf of Joseph Cassidy, Martin F. Conly, William A. Doyle, and Bernard C. Murray, members of said council, in opposition to the motion." There is nothing in the record to show that these four appellants had appeared separately in the proceeding, or that private counsel were authorized to act as attorneys of record for these four appellants. The fact that the court allowed Mr. Kelly, as a matter of favor, to be heard upon the argument of the motion, would not justify an inference that the court had allowed these four councilmen to appear in the proceeding by attorney separate from the corporation counsel, whose duty it was to appear for them. The corporation counsel did not oppose the motion in the court below, nor did he appeal from the order granting the mandamus. Annexed to the record there is a notice of appeal signed by three of the four appellants, and by William J. Kelly as attorney for the four appellants. It would seem that this appeal was entirely unauthorized. As before stated, these four officials, being proceeded against

in their official capacity, were expressly prohibited from appearing by attorney or counsel, the charter requiring that they should be represented by the corporation counsel. No right to appeal as individuals was given to them, because they were not proceeded against individually, but as members of the municipal council; and it was the duty of the corporation counsel to appear for the council as a body, and for each individual councilman when proceeded against officially. It is quite evident from a consideration of the charter that it was the intention of the legislature to require all public boards and officers, when proceeded against in their official capacity, to be represented by the corporation counsel, thus imposing upon him the obligation and responsibility of defending the city and its various departments in all legal proceedings commenced against it. In such proceedings the individual members of the city government have no personal interest, except to have the duties imposed upon them properly ascertained in a legal manner. In any proceeding against officers of the city government in their official capacity, it is the city who is interested in ascertaining the duties and obligations imposed by law upon such officials; and it is quite proper that the city, through its regularly constituted legal representatives, should have the right to appear in judicial proceedings which involve the obligations and duties of the city officials, and the performance of such duties. If these particular councilmen could appear and oppose the granting of this mandamus, they, or a majority of the board, could appear and consent to the granting of the mandamus, against the protest of the other city officials, and of the corporation counsel, upon whom the charter casts the responsibility of defending the interests of the city, and thus a portion of the council agree to perform an act which the remainder were not required to perform. When a person accepts a municipal office, conferred upon him either by appointment or election, he accepts the office subject to the limitations imposed upon him by the charter; and whenever proceedings are instituted against him as a public official the charter requires that he shall be represented by the corporation counsel, and not be entitled to employ counsel, or be represented by individual legal advisers. I think, therefore, that no one authorized to represent these appellants has appealed. But as it was stated upon the argument, and conceded, that a motion was made at the special term to compel the respondent to receive the notice of appeal, which was resisted upon the ground stated above, we do not think that we should dispose of this appeal upon that point. We will therefore examine the question upon the merits.

It is quite unnecessary for us to add anything to the satisfactory opinion given by the learned justice upon the principal question involved, namely, as to the nature of the act that the respondents below were required to perform. We think that the act was ministerial,—expressly directed by the statute,—and that after the new charter of the city took effect all these public officials whose consent was necessary for the issuance of the bonds to pay this award in question were bound to give such consent, by the express pro-

vision of the statute, so as to enable the bonds to be legally issued, and a fund provided for the payment of this award.

The point is further made by the defendant that these relators, as taxpayers, cannot maintain this proceeding, or enforce the obligation of the city of New York to provide the money necessary to pay the amount awarded for the property taken in the condemnation proceedings before mentioned. By the statute under which these condemnation proceedings were instituted (Laws 1892, c. 481, § 1), it is provided:

"The public interest requires the acquisition, by the city of Brooklyn, for the public use of the. reservoir, wells, machinery, pipes, franchises and all other property of the Long Island Water Supply Company, and the said city of Brooklyn is hereby authorized to acquire the same for such use by condemnation."

Here is a direct legislative declaration that the public interest requires the acquisition by the city of Brooklyn of this water supply. Section 2 provides that the proceeding to condemn such property and franchises shall be instituted by the presentation of a petition in the name of the city of Brooklyn by the commissioner of the city works of said city to the supreme court. The procedure is then prescribed, and by section 10 of the act, as amended by chapter 669 of the Laws of 1893, it is provided that:

"When the report is confirmed, the court shall enter a final order in the proceedings, which shall be binding upon all persons having any interest in the property and franchises condemned, directing that compensation be made pursuant to the determination of the commissioners, and that the petitioner shall thereupon be entitled to take and to hold forever the property and franchises condemned for the public use."

### Section 11 provides that:

"Immediately upon payment being made as hereinbefore provided, the city of Brooklyn shall be entitled to enter into the possession of the condemned property and franchises and hold the same in fee for the public use."

### And by section 12 the proper officers of the city of Brooklyn—

"Are hereby authorized and directed to issue and to sell in the same form and manner as is now provided for issuing and for selling duly authorized water bonds of said city, water bonds sufficient to pay the amount, or amounts, directed by the final order to be paid."

Thus, the statute by its express terms imposes the duty upon the officials of the city to acquire this particular property, as essential to the public interest; and there is thus imposed upon the public officers the active duty of acquiring this property, and taking the necessary steps to carry out what the legislature has said was for the public interest. It has long been recognized that any citizen or taxpayer of a municipal corporation can apply to the court for a mandamus to compel a municipal corporation, or its officers, to comply with or perform any act of the legislature which affects the public interest. This rule is stated by Judge Daniels in the case of People v. Daley, 37 Hun, 467:

"Where the act omitted to be performed affects the public interests generally, and all citizens are equally concerned in securing its performance, and that has been enjoined by a law of the state, a different rule prevails. There it is

sufficient, to support the application, that the applicant is a citizen, and entitled to insist upon the execution of the laws of the state. These laws are made for the promotion of public order and individual security, and accordingly every citizen has a sufficient interest in their execution to entitle him to prosecute an application of this description. * * * Public officers are provided for, elected and appointed to execute their provisions; and, where they designedly fail or intentionally omit to do that, every citizen has the inherent right to apply to this court, and insist upon it that the writ of mandamus shall issue in such a form as to secure the observance of that duty."

See, also, People v. Common Council of Buffalo, 16 Abb. N. C. 96, affirmed in 38 Hun, 637, and appeal dismissed in 101 N. Y. 640. These cases are cited with approval by the court of appeals in the case of Chittenden v. Wurster, 152 N. Y. 364, 46 N. E. 857.

It seems to me that this case comes within the rule thus formulated by Mr. Justice Daniels. A proper supply of water certainly affects the municipality in which each taxpayer resides. The legislature has expressly declared that the public interest requires that this water supply should be acquired by the city of Brooklyn; has directed proceedings to acquire such water supply; has directed that, immediately upon payment of the amount awarded by the commissioners, the city of Brooklyn should be entitled to take and hold the property and franchises; and directed the proper municipal officers of the city to issue and sell bonds to provide for the payment required. The legislature having directed that the acquisition of this water supply was for the public interest, it is neither for the court nor for any subordinate municipal officer to set up an individual judgment, as against that of the legislature, as to whether the acquisition of this property is essential for the public interest. These municipal officers are directed by law to perform an act which will result in the acquisition by the city of Brooklyn of certain property, which the legislature has provided is essential for the public interest, and the duty laid upon a municipal officer to comply with this mandatory provision of the legislature is absolute; and it seems to me to be the clear duty of the court to enforce this legislative mandate upon the application of any citizen and taxpayer of the city for whose benefit the statute was passed.

We have thus examined the merits of the application before the court below, and have come to the conclusion that the case was properly decided, and that for these reasons the order appealed from should be affirmed, with costs. All concur.