In the Matter of the Application of Pascal C. J. DeAngelis and Others, Constituting the Board of Education of the City of Utica, N. Y., Respondents, for a Mandamus Order against Daniel Laino and Others, Constituting the Common Council of the City of Utica, and Others, Appellants.*

Fourth Department, May 4, 1932.

* Revg. 141 Misc. 535.

*J. Herbert Gilroy, Corporation Counsel,* for the appellants.

*Warnick J. Kernan,* for the respondents.

TAYLOR, J.   To meet a claimed emergency situation, the board of education of the city of Utica, on April 15, 1931, pursuant to subdivision 8 of section 877 of the Education Law, submitted a special estimate to the common council of the city to the effect that it was necessary to appropriate the sum of $148,500 to build fire towers in certain school buildings in the city.   The record shows that as to the existence of an emergency the board of education made out a *prima facie* case which has been strengthened, rather than overcome, by the city.   Pursuant to statute, the special estimate was published, a public hearing was had, the estimate was adopted by the board and then filed with the mayor and the city clerk.   The common council has refused to make or authorize an appropriation for the purpose mentioned and a peremptory mandamus order has been issued by the learned Special Term requiring the council to grant authorization.   This order is here on appeal.

Article 33-A of the Education Law (added by Laws of 1917, chap. 786, § 1, as amd.) established in each city of the State a board of education.   Reference to the history of school management in the State is unnecessary to give point to this opinion.   The boards of education of Utica and the other cities of the State are bodies corporate, with extensive powers which have been commented upon by our courts.   (Education Law, § 300; *Matter of McNutt Co. v. Eckert,* 257 N. Y. 100; *Matter of Fleischmann v. Graves,* 235 id. 84; *Matter of Emerson v. Buck,* 230 id. 380.)   But their authority is not unlimited.   They are subject to — and confined by — the provisions of the Education Law to which they owe their existence. (*Matter of Hirshfield v. Cook,* 227 N. Y. 297; *People ex rel. Wells & Newton Co. v. Craig,* 232 id. 125.)

Section 868 of this article states generally the powers and duties of boards of education.   Section 877 treats in detail of the powers and duties of those boards, of boards of estimate and apportionment and of common councils in cities of all classes with reference to preparing and filing annual and special estimates (or budgets) to meet intended municipal expenditures for schools.   Section 879 provides for the issuance of bonds when moneys appropriated by common councils or the voters of a city must be raised by taxation

in installments. Section 878, subdivisions 1 and 2, authorizes boards of education in cities having a population of less than 75,000 according to the Federal census of 1910 (which includes the city of Utica) to call a tax election and submit to the voters of the city any proposition to make a capital expenditure of more than $25,000. Such expenditures are detailed in paragraph c of subdivision 1 of section 877.

Subdivision 1 of section 877, after making general provision for preparation and filing of annual estimates in all cities of the State, proceeds in paragraphs a and b to specify purposes for which estimates may be submitted covering ordinary current expenses like salaries, repairs to buildings, purchase of books, apparatus, furniture and supplies, and general maintenance service; and in paragraph c capital expenditures are provided for. The " emergency " expenditure for fire towers under discussion falls within paragraph c.

Subdivision 7 of section 877 relates exclusively to New York city. In that city, if the total amount requested by the board of education in the annual estimate shall be no more than four and nine-tenths mills on the dollar of assessed valuation, the board of estimate and apportionment is commanded to appropriate the said amount. If, however, the amount requested is in excess of four and nine-tenths mills per dollar, the estimate as to such excess is made subject to the same action by the city officials as that taken upon all other departmental estimates. Subdivision 6 refers to the city of Buffalo only. There the annual estimate is subject to the same treatment by the common council as are other department estimates. The council (but not the board of education) is given discretion to include in the budget sums for purposes enumerated in paragraph c (supra), and also such amounts for like purposes as are authorized by tax elections. After the budget is finally adopted by the council that body is required to include the amount of it in the tax and assessment roll, and after the amount is collected to place it to the credit of the board of education. It is to be noted that as to all capital expenditures in Buffalo action by the common council is made optional, not compulsory; the board of education has no say about them after a budget is submitted. Subdivision 2 of section 877 deals with certain cities of the third class (i. e., those having less than 50,000 inhabitants under the constitutional classification [Const. art. 12, § 2] existent prior to the amendments of 1923). It is expressly provided as to them that when it is desired to raise more than $25,000 for a capital expenditure, either the common council or the board of education may call a tax election, or may levy a tax payable in installments. Here, too, clearly the

common council is not required to include special estimates, of over $25,000, as submitted, in the tax and assessment rolls, but may give the people an opportunity to vote upon them first. Discussion of subdivision 3 of section 877, which deals with certain other third-class cities, would not be of value. Subdivision 4 deals with cities of the first class which have less than 400,000 inhabitants and with second-class cities wherein prior statutes have given the board of estimate and apportioment power to determine the amounts which may be included in estimates for school purposes. This does not include Utica. In those cities such boards are given power to increase, diminish or reject any item.

Subdivision 5 of section 877 covers all second-class cities (including Utica) not covered by subdivision 4. In these cities the common council is directed to include the amount specified in the annual estimate in the tax and assessment roll — except that to raise moneys which are to cover any purpose (any capital expenditure) mentioned in paragraph c of subdivision 1 of section 877, " a tax  *  *  *  shall be levied payable in installments and bonds therefor shall be issued and sold as hereinafter provided." Thus special provision is made for spreading over a term of years the expense for such capital expenditures. The money, however, when paid in, is placed to the credit of the board of education. A reading of this subdivision by itself might give the impression that the common council in these cities is compelled to place the stamp of its approval upon every capital expenditure — great or small, emergency or otherwise — proposed by the board of education. We shall later give our reasons for holding otherwise.

Subdivision 8 of section 877 enables boards of education to submit " special estimates " for " emergency " purposes, capital expenditures such as this one for fire towers. The subdivision provides that " the same method of procedure shall be followed in submitting such [special] estimate and such estimate shall be subject to the same consideration and action as is required [in subdivision 5] in the submission, consideration and action upon the regular annual estimate submitted by a board of education." Then comes the statement that " the common council in such a city [as Utica] shall have power to make the appropriations requested by a board of education in such special estimate." This last provision, is permissive, not mandatory, and will be referred to later.

Section 878 (Subd. 1) provides that in cities in the Utica class, when the board of education contemplates expending a sum in excess of $25,000 for any purpose enumerated in paragraph c of subdivision 1 of section 877, the board (not the common

council) may call a tax election, in order that the people of the city may vote on the proposition. This procedure is always open to the board when such a capital expenditure is contemplated, but it has not been utilized in this instance. Section 879 makes provision for the issuance of bonds in Utica. It states (Subd. 1) that " when the common council or the voters of a city authorize an appropriation to be raised by a tax in installments for any of the purposes enumerated in paragraph c of subdivision one of section eight hundred and seventy-seven of this chapter, city bonds shall be issued in the same manner and under the same provisions as other bonds are or may be issued by such city."

Thus we find in article 33-A a complete, harmonious and rational system. In Greater New York (§ 877, subd. 7) the board of education has full authority in budget making up to a certain limitation point. Beyond that other municipal officials take control. In third-class cities (Subds. 2 and 3), as pointed out, the common councils are clearly not under the control of the boards of education in the matter of large capital expenditures. In Buffalo (Subd. 6) and in first-class and second-class cities covered by subdivision 4 of section 877 the board has no mandate over the council in providing for such outlays. In all other second-class cities (including Utica) the common council is required (§ 877, subd. 5) to include in the current tax and assessment roll all portions of the submitted annual estimate which deal with ordinary current department expenses, as specified in paragraphs a and b of subdivision 1 of section 877. As to capital expenditures up to $25,000 the council is bound to proceed as directed in the last four lines of subdivision 5, viz., by levying a tax in installments and issuing bonds. And the council is eventually required to place to the credit of the board all school moneys raised for any purpose pursuant to any estimate, annual or special. As to capital expenditures in excess of $25,000 (other than " emergency " expenditures specified in subdivision 8 of section 877) which are proposed in annual estimates we express no opinion. They are not involved in this case. But as to " emergency " expenditures exceeding $25,000 mentioned in subdivision 8 of section 877, as we read the other (mentioned) sections of the law, the common council in Utica is not bound, willy nilly, to proceed at once to tax in installments (when an estimate is submitted) and to make an appropriation. As to such expenditures the common council may approve or decline to approve recommendations of the board of education in special estimates, for the following reasons: Section 877, subdivision 5, requires a bond issue for capital expenditures exceeding $25,000 and that the money be raised by a tax in installments. An appropriation of money to be raised by a tax

levied in installments must be authorized (§ 879) either by the common council or by the votes of the people. The board of education alone has power to bring about authorization by the voters (§ 878, subd. 1). In subdivision 8 of section 877 it is stated with reference to emergency estimates that " the common council in such a city *shall have power* to make the appropriations requested by a board of education in such special estimate." Power would hardly be granted if compulsion were already operative. The sentence is evidently intended to make it clear that whenever the board of education sees fit to seek the co-operation of the common council in laying a tax — instead of going immediately to the people — the council shall have authority to give its approval by making the appropriation.

Why should the board of education alone be authorized to call a tax election to approve a project unless the council had the legal right to refuse authorization? As has been noted (§ 877, subd. 2) in certain third-class cities both the council and the board of education are allowed to call a tax election. If ratification by the council of such a proposed expenditure were compulsory in Utica, it would seem quite superfluous to give the board of education the right in any case to put the public to the expense of an election. The convenient course via the common council would serve every reasonable purpose, including economy and time-saving.

Boards of education, as stated, are bodies corporate. They are important branches of city government. They have broad discretion and wide authority. Quite evidently, however, it is the policy of the State that only in a limited sense are they immune from supervision in any city. Starting with Greater New York and running down through the list we find no instance where — as to large emergency expenditures (in excess of $25,000 in Utica) — the board of education can *compel the common council* in the first instance to make an appropriation or to credit to the board of education or to raise by taxation or by calling a tax election the amount demanded by the board.

The special estimate before us calls for an unusual outlay, one so large that its advisability might fairly be doubted. In such case the statute does not permit the board to force its views upon the common council. It may ask the approval of the council, the body which has general charge of the municipal finances. The council — for the same reason that lies behind the absence of a provision permitting the board to proceed arbitrarily — may refuse to give an assent which it might regard as against the best interests of the city. Its approval being withheld, resort may then be had by the board to the people through the ballot. And approval

by the public at large disarms all criticism except that of a minority. If this were not so, boards of education in certain second-class cities would have great discretionary authority with reference to large and unusual capital expenditures, authority which they do not have in other cities. Such differentiation would be unreasonable and the right to indulge in it should not be found in the law unless it clearly appears.

It has been intimated that the fact that boards of education have unlimited power as to ordinary, routine annual appropriations pursuant to paragraphs a and b of subdivision 1 of section 877 lends support to the theory advanced by respondents. To this there are two answers: *First*, the statute speaks clearly and beyond doubt in granting full power as to the routine matters; as to emergency demands it can be regarded as granting full authority — if at all — only by inference, through construction. It does not speak with directness *Second*, to leave these routine outlays — none of which are likely to ever run into embarrassing amounts — to the sound and sole judgment of the body in charge of schools is in the interest of convenience and can hardly be said to threaten the safety of city finances. Whereas, as to heavy capital outlay, unusual and burdensome expenses, to require voluntary co-operative approval by the general legislative body of the city or the consent of the citizens through their votes would seem the part of wisdom. Common councils and/or boards of estimate and apportionment are in financial touch with all municipal departments. It is essential that in every city some controlling body shall be in a position to lay a curbing hand upon extravagant expenditure. Municipal solvency demands this. Estimates for usual requirements, those recurring annually in substantially the same amounts, may well be left to a department. But as to unusual and heavy emergency demands no department should have the power to compel approval by the body upon which is placed the general responsibility for municipal financial safety. These considerations give added support to our construction of this statute as applied to the city of Utica. We see legislative wisdom in the enactment — something, of course, which would not be subject to our disapproval.

The order of peremptory mandamus should be reversed on the law and the motion denied, without costs.

All concur, except THOMPSON, J., who dissents and votes for affirmance.

Order reversed on the law and not in the exercise of any discretion, and motion denied, without costs.