In the Matter of the Application of ELIZABETH V. TALBOT, Petitioner, for an Order against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, New York County, August 17, 1939.

*Austin B. Mandel,* for the petitioner.

*Mark E. Cymrot,* for Evening Adult Students Assn., *amicus curiæ.*

*William C. Chanler,* Corporation Counsel [*Michael Bucci* of counsel], for the respondent.

BERNSTEIN, J. The petitioner, a resident and elector of the city of New York, has brought this proceeding under article 78 of the Civil Practice Act for an order directing the board of education of the city (1) to nullify and set aside the action taken by the board on July 27, 1939, in adopting or amending its budget for the fiscal year 1939–1940, and (2) to include in such budget, as and when it shall have been legally adopted or amended, provision for the maintenance of evening elementary schools in compliance with section 311, section 620, subdivision C, paragraph 3, and section 623 of the Education Law.

The petition alleges that at a meeting of the board held on July twenty-seventh, at which four of the seven members constituting such board were present, the board amended its budget for the fiscal year by striking therefrom specific items aggregating $6,173,581.25; that of the four members present at such meeting only three voted on this action in the affirmative, while one voted in the negative; and that the president of the board declared such amended budget validly adopted, despite the fact that the majority vote of the board on such action is required to be four, under section 41 of the General Construction Law. This, it is claimed, made the action of the board a nullity. The petition further alleges that, as part of such action, the board amended its budget by striking therefrom an item of $339,919.75 from the appropriation for evening elementary school service. This elimination of evening elementary schools and of the subjects taught therein, it is further claimed, was a violation of the mandatory requirements of the sections of the Education Law already mentioned.

The board does not deny these facts, but challenges the legal conclusions of the petitioner. It points out that it is a corporation created by the Education Law of the State; that, as such, it has for many years past conducted its business pursuant to parliamentary rules of procedure and to the provisions of the General Corporation Law, under which four of its seven members constitute a quorum and under which the acts of a majority of the quorum have been deemed the acts of the board; that the proceedings of the meeting of July twenty-seventh were conducted in accordance with those rules and provisions; and that it has full power and authority over the general management and control of the educa-

tional affairs of the city to the extent that it may deem necessary subject only to the statutory limitation that it shall not incur any liability against the funds under its control for any purpose in excess of the amount appropriated or made available to it. (Education Law, § 877, subd. 10.) It states that, in preparing its budget estimate for the fiscal year, it estimated that it would receive State aid in the sum of $57,912,392.76, and, on the basis thereof, made provision for the maintenance of evening elementary schools; that subsequently this estimated State aid was reduced by the State Legislature by approximately $5,300,000, and it became its duty to curtail its expenses to an amount within the limit of its revenues, and that by reason of the fact that approximately ninety-three per cent of its proposed expenditures comprised mandatory requirements for the payment of salaries, it was compelled, in good faith and in the exercise of its best judgment, to abolish or curtail certain services, including the service of evening elementary schools.

Section 41 of the General Construction Law provides: " Quorum and majority. Whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of all such persons or officers at a meeting duly held at a time fixed by law, or by any by-law duly adopted by such board or body, or at any duly adjourned meeting of such meeting, or at any meeting duly held upon reasonable notice to all of them, may perform and exercise such power, authority or duty, and if one or more of such persons or officers shall have died or have become mentally incapable of acting, or shall refuse or neglect to attend any such meeting, a majority of the whole number of such persons or officers shall be a quorum of such board or body, and a majority of a quorum, *if not less than a majority of the whole number of such persons or officers* may perform and exercise any such power, authority or duty." (Italics by court.)

In defense of its procedure, the board has suggested that the italicized language of the section be interpreted as intending to qualify the word " quorum " (immediately preceding it), and not the word " majority." Such interpretation, however, would not only do violence to all known rules of legal draftmanship, but be redundant to the definition of " quorum " given in the preceding clause as " a majority of the whole number." If the board is to justify its claim of regularity it must, therefore, do so on its contention that the section is inapplicable to it.

While the board of education is a corporate body created under the Education Law and may sue and be sued in its corporate name (*Matter of Fleischmann* v. *Graves*, 235 N. Y. 84), its members

are public officers. (*Lewis* v. *Board of Education*, 258 N. Y. 117; *Rowland* v. *Mayor*, 83 id. 372; *Metzger* v. *Swift*, 258 id. 440.) They are, as provided in section 41, given power and authority, or charged with a public duty to be performed or exercised by them jointly or as a board or similar body. By another section of the General Construction Law, the provisions of section 41 are made " applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given." (§ 110.)

The board has pointed to nothing in the Education Law, the statute of its creation, to show that its general object or its language indicates that the provisions of section 41 of the General Construction Law are inapplicable to it. It claims, however, that a different meaning should be given to that section because of the fact that it is a corporate body. It contends that when its members act, they act not as a group of individuals or an unincorporated body, but as the board of directors of a municipal corporation, governed and controlled by the provisions of law applicable to corporations. One of those provisions, it points out, is section 27 of the General Corporation Law, which makes the act of a majority of the directors present at a meeting the act of the board. As a corporation, it says, it was not only its right but its duty to conform to corporate practices and procedure, to establish its own rules and by-laws, and to transact its business by a majority of the members present.

The fallacy of this contention lies in the fact that it presents a strained and far-fetched conception of a group of public officers who are selected under special statutory authority to perform public duties of a high degree. It lies in the fact that even corporations organized under the General Corporation Law may only act by a majority of a quorum " except when otherwise expressly required by law or the by-laws." (§ 28.) It lies in the fact that it attempts to ignore a statute which was designed to provide generally for the construction of all other statutes, and which is, in fact, applicable to every other statute unless a contrary intention is indicated. (*Matter of Bronson*, 150 N. Y. 1, 5.)

The report of the Board of Statutory Consolidation (1907), at page 2152, has the following note on section 41: " This section provides what shall constitute a quorum or majority where not expressly stated and in this sense is a definition of terms." What shall constitute a quorum or majority to transact business in the board of education is nowhere else stated, and the definition of the terms by the section must be controlling.

It was the common-law rule that when the power to act was conferred by statute upon several persons, all were required to act before the power could be exercised. The purpose of section 41 was to change that rule. (*Morris* v. *Cashmore*, 253 App. Div. 657.) It changed it for all public officers, irrespective of whether they acted as a group of individuals, as an unincorporated board or as a corporate body.

The suggestion that the board here operated as a parliamentary body, with power to regulate its own procedure, has no support in a review either of its history or its functions. It is a body created by statute, with the limited powers conferred on it by the statute of its creation. The power to legislate is not one of those powers. (Education Law, § 868.)

These considerations lead to the conclusion that effective action by the board as constituted can be had only by at least four affirmative votes, and that the adoption of the amended budget on July twenty-seventh by a lesser number was invalid. (*Moll* v. *City of Lockport*, 118 Misc. 573.)

We are now brought to a consideration of the second point raised by the petitioner in this proceeding, the elimination of evening elementary schools from the amended budget as adopted. Such elimination, she says, cannot be effected because the maintenance of these schools is mandatory under the Education Law of the State. The pertinent section of the law cited by her to sustain her claim is section 311 of the said law, which in part provides:

" Kindergartens; night schools. The board of education of each school district and of each city may maintain kindergartens which shall be free to resident children between the ages of four and six years, provided, however, such board may fix a higher minimum age for admission to such kindergartens. * * * Night schools wherein the common branches and such additional subjects as may be adapted to students applying for instruction are taught on at least two nights each week, for two hours each night, shall be maintained by the board of education:

" a. In cities having a population of one hundred thousand or more, on at least one hundred nights."

In support of that contention the petitioner refers also to section 620, subdivision C, paragraph 3, to indicate the elementary character of the studies which the statute provides for these night schools, and section 623, which imposes the obligation on certain minors to attend upon instruction thereat. These provisions, she says, show a clear intent of the Legislature that the service shall continue uninterrupted.

The board meets that issue with the argument that none of those provisions are applicable to the city of New York because

article 33-A (§§ 865 to 881) was intended to supplant and supersede the earlier provisions governing boards of education in cities, except in so far as they might be specifically applicable. That article, it reasons, furnishes a complete index or guide to the powers of boards of education in cities generally and in New York city particularly. In support of its contention the board cites section 868, subdivision 5, of that article:

" Powers and duties of board of education. Subject to the provisions of this chapter, the board of education in a city shall have the power and it shall be its duty  *  *  *

" 5. To establish and maintain such free elementary schools, high schools, training schools, vocational and industrial schools, kindergartens, technical schools, night schools, part-time or continuation schools, vacation schools, schools for adults, open air schools, schools for the mentally and physically defective children or such other schools or classes as such board shall deem necessary to meet the needs and demands of the city."

The court finds itself unable to adopt that view. An examination of the history of all these statutes leads to the conclusion that neither section 868 nor any other part of article 33-A was intended to supersede section 311. The fact of the matter is that while article 33-A was added to the law by chapter 786 of the Laws of 1917, section 311 was adopted in its present form by chapter 409 of the Laws of 1918. As such they are coexistent and corelated, and must be read in *pari materia*. (*Matter of Cusack* v. *Board of Education,* 174 N. Y. 136, 139.)

So read, we find that section 311 simply provides for the maintenance of night schools, while section 868, subdivision 5, provides that such night schools are to be maintained by the board in such manner and to such extent as the board may deem necessary to meet the changing needs and demands of the city. In other words, it clarifies the duties and powers of the board with respect to all classes of schools and clothes it with the discretion of providing for them to the extent that the public interest may require. To construe the subdivision as giving the board a discretion to eliminate night schools, as it contends, is to construe it also as giving the board a discretion to eliminate free elementary schools as well, for both classes of schools are referred to conjunctively in the subdivision. The absurdity of such a construction is obvious.

Only one other question remains to be considered. Is the provision of section 311 for the maintenance of night schools mandatory? The section provides for both kindergartens and night schools. The word used in connection with the maintenance of kindergartens is " may." The word used in connection with the

maintenance of night schools is " shall." Under the general rule of statutory construction words of command are construed as peremptory unless there is something in the act or surrounding circumstances to indicate a contrary intent. Where words in a statute are peremptory and used in contradistinction to permissive words in the same statute, it will be deemed that the legislative intent was to make such statute imperative. (Cf. *People ex rel. Sherrill* v. *Guggenheimer*, 28 Misc. 735; affd., 47 App. Div. 9.) And where the word " may " in a statute has been amended to the word " shall," the courts will construe the amended statute as mandatory. (*Rosenblum* v. *Gorman*, 21 App. Div. 618.) That exactly is the situation here.

Section 311 as now written was enacted by chapter 409 of the Laws of 1918 as an amendment to former section 311 of chapter 21 of the Laws of 1909, as amended by chapter 140 of the Laws of 1910. The former section employed the word " may " in connection with the maintenance of both kindergartens and night schools. The change made is not only illuminating but decisive on the legislative intent.

Impressed with the difficult problem that confronted the board when it was suddenly called on to curtail useful school services to meet the cut in its appropriations, and convinced that its decision was arrived at in good faith and in the exercise of its best judgment, the court is, nevertheless, constrained to hold, regardless of the ineffectiveness of the vote taken, that the elimination from the amended budget of the item of evening elementary schools is in violation of the statute and illegal. On the conclusions reached the petitioner is entitled to the order applied for.

In view of the public interest involved in this proceeding, the order to be entered herein may provide for a stay until such time as the respondent can, with due diligence, apply to the Appellate Division for a stay pending appeal therefrom. Settle order accordingly.