In the Matter of the Application of CHARLES J. HENDLEY, Petitioner, against JAMES MARSHALL and Others, Composing and Constituting the Board of Education of the City of New York, Respondents.

Supreme Court, Special Term, New York County, September 22, 1939.

*Herman E. Cooper* [*Charles Barasch* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel* [*Seymour B. Quel* and *Denis B. Sullivan* of counsel], for the respondents.

PECORA, J. This is an application by petitioner for an order under article 78 of the Civil Practice Act to direct the members of the board of education of the city of New York to adopt a resolution declaring the existence of an emergency within the purview of subdivision 8 of section 877 of the Education Law. The respondents are to be further directed, upon the adoption of such a resolution, to prepare a supplemental budget to provide for the maintenance of certain items of educational activities for the ensuing fiscal year.

These activities were eliminated because of the curtailment by the fiscal authorities of the budgetary requests of the board of education. The eliminations include, among other things, evening elementary schools, day classes for adults in English, and athletic centers; and also necessitate deferring the alteration of obsolete sanitary facilities, and a number of other items specified in the resolution adopted by the board of education on July 27, 1939. That resolution directed the superintendent of schools to eliminate the foregoing items together with others, aggregating a total of over $6,000,000. It was intended thereby to meet a cut of over $8,000,000 —$3,000,000 of which represented a cut by the board of estimate, and over $5,000,000 of which was due to a curtailment in State aid.

In order to understand the purport of the petition and to appraise the responsibility for the situation that has arisen on account of the cuts in the requested appropriations, it may be well to give a *resumé* of the antecedent events.

The duties of the board of education in connection with the estimate of educational expenditures for the ensuing year, are fixed by subdivision 7 of section 877 of the Education Law. The board of education submits a detailed estimate of the financial requirements for the ensuing year, consisting of a general school fund and a special school fund. The general school fund embraces the moneys for the payment of the salaries of all persons employed in the supervising, teaching and examining staffs, attendance officers, etc. The special school fund comprehends all moneys raised for educational purposes not comprised in the general school fund. The board of estimate is required to appropriate an amount, if requested, not less than four and nine-tenths mills on every dollar of assessed valuation of the real and personal property in the city liable to taxation. If the desired amount exceeds four and nine-tenths mills, it is optional with the board of estimate to fix the limits of such requested excess.

The budget estimate originally submitted by the board of education showed a request for a total of $155,000,000 for educational purposes, of which $58,000,000 was estimated as the amount receivable as statutory aid from the State of New York and the balance of $97,000,000 was to be raised by a municipal tax levy. The board of estimate reduced the appropriation of the portion to be provided by city taxation to $94,000,000. It is admitted that this appropriation is in excess of the four and nine-tenths mills mandatory requirement under the provisions of law. What the board of estimate did not, however, have before it at the time was the fact that the amount receivable, by way of State aid,

would be cut by the State Legislature by ten per cent, making an aggregate reduction of the original departmental estimate in the sum of over $8,000,000.

This item of estimate of State aid requires some explanation. The expectation of such aid was not a matter of hope, but one based upon provisions of the Education Law. Section 490 of that law provides for an apportionment by the Commissioner of Education of the State of school moneys appropriated by the Legislature, which moneys are to be applied exclusively to the payment of teachers' salaries and the cost of school maintenance. The directions for the apportionment of the moneys and the bases for such apportionment are given in section 491 and sections that follow. They are founded upon various considerations, including the number of elementary, high and part-time or continuation school teachers, total attendance, and other elements that it is needless to consider in detail. Suffice it to say that, under the law, the amount of apportionment of school moneys by the State is closely predictable by the authorities.

However, after the submission of the estimate by the board of education and after the cut of $3,000,000 therefrom by the board of estimate, the Legislature passed chapter 463 of the Laws of 1939 as an economy measure. By that act it directed the Commissioner of Education to deduct ten per cent from the amount apportionable as State aid, except from the amount apportionable for transportation of pupils and the construction of school buildings. It seems to be indicated by the decision in *People* v. *Tremaine* (281 N. Y. 1) that the enactment of this economy measure by the Legislature was within its constitutional powers.

The net result of the actions of the board of estimate and the State Legislature was, as has been mentioned, to necessitate a reduction in expenditures for the ensuing year in the total sum of over $8,000,000. In meeting this necessity, the board of education was limited by certain statutory requirements which made its search for desired economies difficult. It could not reduce the salaries of the teaching or the supervising staff, because these are fixed by State law. It, therefore, endeavored to solve the problem by curtailing certain educational activities, which involved the laying off of persons employed in such activities so as to avoid the expense of their salaries. The prospective educational savings by such curtailment and the specific types of curtailment are mentioned in Exhibit A annexed to the petition.

The legal power of the board of education to make such curtailments was sustained by the courts, in a controversy involving the right of the board of education to eliminate specific positions

which had been provided for in the estimate for the fiscal year and allowed by the board of estimate. An application was made by certain petitioners to direct the board of education to take steps to pay their salaries as teachers of kindergarten classes for the fiscal year 1939 to 1940. The petition was granted in the court below, and on appeal to the Appellate Division the order was reversed (*Divisich* v. *Marshall*, 257 App. Div. 294), the court saying:

" Prohibited by subdivision 10 of section 877 of the Education Law from incurring a liability or expense either against funds under its control or against the city in excess of an amount appropriated or available, the board of education of the city of New York of necessity was compelled to adjust its contemplated activities for the coming fiscal year to the total amount appropriated for its use.

" We are of opinion that, in the circumstances presented, ample authority existed in the board for abolition of the positions held by the petitioners and others similarly situated, under the provisions of subdivision 2 of section 868 of the Education Law. (*People ex rel. Kaufman* v. *Board of Education*, 166 App. Div. 58; *Matter of Cusack* v. *Board of Education*, 174 N. Y. 136.)"

The Court of Appeals in *Divisich* v. *Marshall* (281 N. Y. 170) sustained this ruling, saying (p. 175):

" When an appropriation by the city has been made, ' The board of education shall administer all moneys appropriated or available for educational purposes in the city, subject to the provisions of law relating to the audit and payment of salaries and other claims by the department of finance ' (§ 877, subd. 7). Necessarily and by this law expenditures and liabilities chargeable to these funds are limited to the appropriation.

" No State aid is granted for kindergarten pupils or teacher units. Salaries payable to the teaching and supervisory staffs are mandatory, with few exceptions, but otherwise the Board has complete discretion in disbursing its money.

" This case relates to no mandatory payments. The appeal rests upon the proposition that under the present charter the Board is restricted to the line proposal in its budget estimate as submitted and adopted by the Board of Estimate for the year 1939–1940 and must spend the money if it has it, that is, cannot abolish any teaching position. As it turns out the Board has not sufficient money but, says the appellant, it has no power to reduce its teaching staff to keep within its means. * * *

" The Special Term granted an order restraining the Board of Education from taking any such action. The Appellate Division reversed and held that the Board had full discretion in the circum-

stances and acted within its statutory powers. We can find no answer to this conclusion and accordingly affirm its order."

The Court of Appeals having declared legal the efforts of the board of education to abolish positions in order to keep within the appropriation, the formal action to amend the budget by the resolution of July 27, 1939, already mentioned, followed. The adoption of the revised budget in accordance with the eliminations of $6,000,-000 in that resolution was declared illegal in a decision of Mr. Justice BERNSTEIN in *Matter of Talbot v. Board of Education* (171 Misc. 974). That decision did not touch directly the merits of the action of the board, but declared the vote illegal for technical reasons that need not be discussed further. Mr. Justice BERNSTEIN did mention, in the course of his opinion, that the elimination of evening elementary schools was illegal, and that the board was bound to maintain an educational service of that character.

Virtually, then, the proponents for retaining the educational services intended to be eliminated for the budget year found themselves blocked in their efforts to prevent a readjustment by the board of education of the educational plan for the year to follow, in order to meet the decreased appropriation. They accordingly turned for a source of relief to subdivision 8 of section 877 of the Education Law, to compel the board of education to make a request upon the board of estimate to restore the eliminated services, so as to enable the educational system to retain the number of available activities eliminated by the board of education by stress of circumstances. The ground of their present motion is that the elimination of these services has created an emergency, the existence of which the board of education was bound to report to the board of estimate for appropriate action. The statutory provision under which this relief is sought has never been invoked in connection with the city's school system, and very rarely elsewhere. As the motion is entirely based upon its language, it may be well to reproduce it here:

" 8. A board of education may, to meet emergencies which may arise, submit a special estimate in which items for extraordinary expenses may be submitted to meet such emergencies. Such estimate shall contain a complete statement of the purposes for which the items are requested and the necessity therefor. The same method of procedure shall be followed in submitting such estimate and such estimate shall be subject to the same consideration and action as is required in the submission, consideration and action upon the regular annual estimate submitted by a board of education. The common council in such a city shall have power to make the appropriations requested by a board of education in such

special estimate. The common council of a city of the third class, the common council, the board of estimate and apportionment of a city of the second class and, in a city having a population of four hundred thousand or more and less than one million, according to the Federal census of nineteen hundred and ten, the council may temporarily borrow the amount appropriated on city certificates of indebtedness or by the issuance of revenue bonds, or other municipal bonds, which certificates of indebtedness or bonds shall be payable at such time and in such manner as shall be provided by general laws or the charter of such city for other certificates of indebtedness or revenue bonds."

Although the point has not been urged upon the argument before me, I am somewhat in doubt as to whether this subdivision has any application to the city of New York. It would seem that subdivision 7 contains a complete fiscal plan for raising money for educational purposes in the city of New York, both for regular purposes and for emergencies. As has been already observed, the appropriation of four and nine-tenths mills of the assessed valuation for the general fund is mandatory. Anything in excess thereof which might be embodied in the budgetary request, is subject to the discretionary action of the board of estimate. The following provision in that section would seem to cover emergencies as well, namely, " the board of estimate and apportionment is authorized to make additional appropriations for educational purposes authorized by this chapter." A more sweeping authorization it would be difficult to find.

However, let us assume that subdivision 8 applies to emergencies in this city as well. It is conceded that the appropriation authority is not compelled to heed the request of the board of education for emergency appropriation. It has merely the power to accede to it, if it chooses to do so. In fact, in one case in which the section was construed (*De Angelis* v. *Laino*, 235 App. Div. 390) it was held that the council had the right to refuse to give an assent. What could be accomplished, then, by the granting of the petition requested here? Merely a judicial direction to compel the board to voice its resentment at the fact that essential educational services have had to be curtailed, through the medium of an official statement of the existence of an emergency, and a demand that it be met. Such memorial, addressed to the board of estimate, presumably might strengthen the unofficial voice of public opinion, and persuade the board of estimate to perform an act which it cannot legally be compelled to exercise. It goes without saying that it is not the function of a mandatory order under article 78 of the Civil Practice Act, to create an array of public opinion, with the aid of an official

body to which the order is directed, to force action by any other body. Publicity, and what might be called propaganda — if it may be permitted to use a somewhat discredited term — should proceed through the organs of public opinion, such as the press, the radio, the mass meeting, the petition for redress of grievances directed to the bodies which have the power to grant relief, and other such media.

It would be unseemly for the court to express an opinion upon the action of the Legislature, which, in the interest of economy and without any preliminary warning, reduced State aid by ten per cent of the amount previously directed by statute. That suddenness of action, which is beyond legal control or review, has in a sense created the situation complained of by the petitioner, to which the board of education has had little time to adjust itself.

The latter board has proceeded in good faith and in the exercise of sound discretion to bring the expenditures for the coming year within the amount appropriated. In doing so it has been compelled to eliminate educational features, which it is regrettable that the city should even temporarily abandon, such as classes for adults, community and recreation centers, play schools, and after school athletic centers. Ordinarily, discretion to make the necessary financial adjustment, if soundly exercised, will not be interfered with by the courts. Possibly a professional educational appraisal of the changes may lead to a conclusion of doubt as to the utility of certain policies. In extreme cases the wise pursuit of such policy may be the subject of review by the Commissioner of Education, who is far better equipped professionally to formulate a judgment in that respect than the court, and who is not bound by the restrictions imposed upon the court's power in the granting of orders under article 78 of the Civil Practice Act. But the wisdom of any given item to be eliminated in preference to readjustment in another direction is not before this court now. The question presently confronting us is a demand, without more, to compel the board of education to initiate steps which will lead to the restoration of a large number of educational services. This the court has neither the right to do summarily, nor the factual basis upon which to grant the omnibus order requested.

The importance of such a basis was emphasized in the decision in *Matter of Jaffe* v. *Board of Education* (265 N. Y. 160), in which attention was called to the difficulty which would confront the court in controlling the sound discretion of the board of education on mere mechanical data. Thus, it was held there that the mere existence of vacancies in certain positions did not *ipso facto* cast an absolute and mandatory duty upon the board of education to

fill them regardless of other considerations. It was further held that the questions of how many teachers should be appointed, for what classes, and when, depended upon the judgment of the board of education as to how efficiency under any given set of circumstances could best be attained. So here, the mere elimination of certain activities by the board of education, designated though they are by impressive titles, is not enough to present to the court a situation calling for the correction of an alleged abuse of discretion by the board of education. At times the proper appraisal of educational policy will, as I have said, be made by the Commissioner of Education, as was done by him in a case parallel to the *Jaffe* case, when an appeal was made to him after the adverse *Jaffe* decisions. After an examination of the facts he directed the board of education to discontinue the practice of filling vacancies by substitute teachers. (*Matter of Vanderwounde*, 50 State Dept. Rep. 199.)

What I have said here does not necessarily imply that the application for the relief sought here should be directed to the Commissioner of Education. It is only intended to indicate his wider latitude, which may extend, at times, to a review of the wisdom of an educational policy sought to be pursued by a local board of education.

Respondents have interposed no answer, but have rested on the insufficiency of the petition by moving to dismiss it. For the reasons indicated, the cross-motion to dismiss must be granted and the application for the relief demanded by the petition denied.