PHILIP R. MICHAEL, as a Member of the Board of Trustees of the New York City Employees' Retirement System, Plaintiff, v CAROL BELLAMY et al., Constituting a Majority of the Board of Trustees of the New York City Employees' Retirement System, Defendants.

First Department, April 16, 1981

### APPEARANCES OF COUNSEL

*James J. Dwyer* of counsel *(Leonard Koerner* and *Paul T. Rephen* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for plaintiff.

*Laurence R. Kruteck* of counsel *(Ann W. Schulman* with him on the brief; *Cohn Glickstein Lurie Ostrin Lubell & Lubell,* attorneys), for defendants.

### OPINION OF THE COURT

FEIN, J.

This action is submitted pursuant to CPLR 3222 upon an agreed statement of facts dated September 22, 1980. The controversy involves the validity of a resolution adopted by the Board of Trustees (Board) of the New York City Employees' Retirement System (System) on October 6, 1978 by the votes of defendants, all members of the Board over the lone dissenting vote of plaintiff who is also a member of the Board. The underlying question is the proper

interpretation of section B3-36.6* (subd k, pars [1], [2]) of the Administrative Code of the City of New York following the enactment of the Federal Age Discrimination Employment Act Amendments of 1978 (Pub Law 95-256, 92 US Stat 189) (1978 FADEA Amendments), which raised the age at which an employee may be mandatorily retired from 65 to 70.

The Administrative Code, section B3-36.6 (subd k, pars [1], [2]), authorizes a System member, under certain conditions, to use so much of his purchased prior service credit as is necessary to make up the 25 years of qualifying service required for retirement under Career Retirement Plan A. The condition here in issue is that the member must have "attained a status requiring that he be retired for superannuation pursuant to subdivision three of section B3-38.0 of the code" (Administrative Code, § B3-36.6, subd k, par [1], cl [d]).

Effective January 1, 1969, retirement for superannuation was to take place on the first day of the calendar month succeeding the month in which a member attained the age of 65. (Administrative Code, § B3-38.0, subd 3, par [a], cl [3].)

The 1978 FADEA Amendments established a minimum mandatory retirement age of 70. On October 6, 1978, the Board, by the votes of the defendants, adopted resolution R-127 which declared, so far as here pertinent, that System members could continue to utilize the purchased service credit pursuant to subdivision k of section B3-36.6 prior to their attainment of the age of 70. Plaintiff was the sole dissenting trustee. The effect of the resolution is to permit a System member to retire at any time between the ages of 65 and 70 and obtain the benefits of membership in Plan A. It is plaintiff's position that the effect of the FADEA Amendments of 1978, which raised the age at which employees may be mandatorily retired from 65 to 70, is to require an interpretation of section B3-36.6 (subd k, pars [1], [2]) of the Administrative Code which would prohibit System members from utilizing their purchased ser-

---

* "Optional service retirement upon completion of minimum period of service under career pension plan."

vice credit until they attain the mandatory retirement age of 70.

Defendants argue that the purchased service credit benefits available to members of the System at age 65, prior to the adoption of the 1978 FADEA Amendments, are not required to be diminished or impaired by reason of the adoption of the 1978 FADEA Amendments. They contend that these amendments were not intended to pre-empt State laws so as to prevent employees from voluntarily retiring prior to attaining age 70 or to impose a penalty on such an employee who retires prior to age 70 by taking away benefits to which he would have been entitled if not for the adoption of the 1978 FADEA Amendments.

The issue turns on whether the term "superannuation", as contained in the Administrative Code, is to be interpreted as age 70 for all purposes and whether such construction will impair retirement benefits granted by the Code and protected by section 7 of article V of the New York State Constitution.

The System was established in October, 1920. Initially it provided members with three retirement plans with varying benefits based upon years of service and salaries received. Additional plans and modifications were made available until 1968 when two new optional retirement plans for members in career pension plan positions were established by the State Legislature. These were Career Pension Plan A and the 55-Year Increased Service Fraction Plan B, which provided additional rights, privileges and benefits to System members then in city service and prospective members who qualified under the terms of the new plans (L 1968, ch 821, §§ 3, 10).

Plan A permits optional retirement for all members holding career pension plan positions upon completion of 25 years of allowable qualified service and the attainment of age 55. Plan A provides greater benefits than Plan B and all prior plans. Plan B, however, has no minimum service requirement. The sole qualification for retirement under Plan B is attainment of age 55.

Section B3-6.0 of the Administrative Code provides that a System member may purchase credit for "city-paid-for"

service rendered prior to the date of current membership by an additional pension deduction based on the member's present salary and on reduced pension rates, for a period equal to the service being purchased, such credit to be used only for the purpose of determining the amount of any benefit and not for the purpose of determining eligibility for a benefit.

However, there are exceptions providing for the utilization of purchased prior service credit for the purpose of determining eligibility for a retirement benefit.

Subdivision k of section B3-36.6 of the Administrative Code provides in pertinent part:

"k. (1) Notwithstanding any other provision of this title to the contrary, any career pension plan member who:

"(a) was a member in city-service on December thirty-first, nineteen hundred sixty-seven; and

"(b) has continuous city-service as a member since he last became a member; and

"(c) has heretofore purchased or shall hereafter purchase service credit, pursuant to section B3-6.0 of the code, for a continuous period of career pension plan qualifying service, next preceding the date on which he last became a member; and

"(d) has attained a status requiring that he be retired for superannuation pursuant to subdivision three of section B3-38.0 of the code; and

"(e) at that time, shall not have completed twenty-five years of career plan qualifying service, unless such purchased service credit be used toward satisfaction of the requirements of this section with respect to eligibility to retire pursuant to subdivision d of this section; shall, in addition to being credited with such purchased service as provided for by such section B3-6.0, be credited with such purchased service, subject to the provisions of paragraph two of this subdivision k, for the purpose of determining eligibility to retire for service under subdivision d of this section."

This provision permits a System member, who is compelled to retire because of age and who lacks the 25 years

of service which is a prerequisite for retirement in Plan A, to utilize his purchased prior service credit to the extent necessary to complete the 25 years of service required for retirement in Plan A. In order to utilize this provision, a member must have "attained a status requiring that he be retired for superannuation pursuant to subdivision three of section B3-38.0 of the code" (Administrative Code, § B3-36.6, subd k, par [1], cl [d]).

Prior to the 1978 FADEA Amendments, the purchased prior service benefits could only be utilized at age 65, the then mandatory retirement age. The 1978 FADEA Amendments prohibited mandatory retirement for persons less than 70 years of age (US Code, tit 29, § 631, subd [a]). The 1978 FADEA Amendments overcame the Supreme Court decision in *United Airlines v McMann* (434 US 192) which held that FADEA did not prohibit the mandatory retirement of a member of a bona fide employee benefit plan. The 1978 amendments expressly provided that such plans could not authorize involuntary retirement prior to age 70.

On May 12, 1978, the Corporation Counsel of the City of New York issued Opinion No. 108,669 ruling that the 1978 FADEA Amendments had established a minimum mandatory retirement age of 70. That conclusion is not now in dispute.

In response to an inquiry from the executive director of the System, the Corporation Counsel on August 10, 1978, issued Opinion No. 108,744 which concluded that a member of the System may not claim the benefits of subdivision k of section B3-36.6 of the Administrative Code until he reaches the minimum mandatory retirement age of 70. However, at a meeting on October 6, 1978, the Board considered the question addressed in that opinion and adopted the resolution here in issue, permitting System members between ages 65 and 70 to utilize purchased service credit toward eligibility for the 25-Year Career Pension Plan A, pursuant to subdivision k of section B3-36.6.

The statutory language is plainly to the contrary. In order to utilize section B3-36.6 (subd k, pars [1], [2]), a member must have "attained a status requiring that he

be retired for superannuation pursuant to subdivision three of section B3-38.0 of the code". Paragraph (1) of subdivision k incorporates by reference the mandatory retirement provision of subdivision 3 of section B3-38.0. An employee cannot be retired for age prior to age 70.

The FADEA Amendments override the State Constitution and laws (US Const, art VI, cl 2; *California Comm. v United States*, 355 US 534; *Testa v Katt*, 330 US 386; *Gibbons v Ogden*, 9 Wheat [22 US] 1). Thus, mandatory retirement cannot occur before age 70. The language "attained a status requiring that he be retired for superannuation" must now be construed as referring to the time when mandatory retirement presently occurs, age 70. "Where one section of a statute thus attaches itself to another section thereof, a subsequent amendment of the adopted section must be read into the section that made the adoption" *(People v Solomon*, 296 NY 220, 222).

Here the adopted statute was not amended but instead was pre-empted to the extent that the amended retirement age of 70 established by the 1978 FADEA Amendments must be read into subdivision k (par [1], cl [d]) of section B3-36.6. Since the exception for utilizing prior purchased service credit can only be used to establish eligibility for a retirement benefit at the time of mandatory retirement, it follows that it may not be utilized prior to age 70.

Defendants contend that the term "superannuation" was understood as being age 65 at the time Plans A and B were established. But this was only because mandatory retirement was then age 65. By virtue of the FADEA Amendments, mandatory retirement for superannuation only takes place when a member attains age 70. Hence, the provisions for utilization of the prior purchased credit for purposes of eligibility can only apply at age 70. The statute was plainly designed to ameliorate some of the effects of an involuntary retirement. Only those compelled to retire because of age are entitled to use such prior purchased credit and only to the extent necessary to attain Plan A eligibility. The statute does not lend itself to the interpretation embodied in the Board resolution which allows utilization over the course of the five-year period between ages

65 and 70. The benefits were intended to be utilized at one point, mandatory retirement, now age 70. *(Nussbaum v New York City Employees' Retirement System,* 74 AD2d 782.)

No right accrued merely because of the attainment of age 65 under the prior law. The right accrued only because the employee was required to retire, albeit at age 65. Since there is now no such requirement to retire at 65, there is no impairment of any rights. Nothing in the State Constitution is to the contrary. Section 7 of article V makes membership in a System "a contractual relationship, the benefits of which shall not be * * * impaired." *(Kleinfeldt v New York City Employees' Retirement System,* 36 NY2d 95, 99.) The right to utilize the credit for eligibility purposes at age 65 was not part of the pension contract. The contract conditioned the right to utilize the credit upon mandatory retirement for "superannuation". The right attached to the status of superannuation, previously age 65, is now age 70.

The power of the Legislature to change mandatory retirement age is clear *(Humbeutel v City of New York,* 308 NY 904). A pension benefit may be modified in consideration for a benefit conferred *(Dunn v City of New York,* 7 NY2d 232). The change of mandatory retirement age by overriding Federal law is a benefit to System members. It permits them to continue working until age 70. The modification does not impair the contract.

Accordingly, plaintiff is entitled to a judgment, without costs, directing that the New York City Employees' Retirement System shall not allow any member, at any time before he has attained the age of 70, credit for purchased service credit toward his 25-Year Career Pension Plan A eligibility under the provisions of subdivision k of section B3-36.6 of the Administrative Code.

BIRNS, J. P., SANDLER and SILVERMAN, JJ., concur.

Upon submission of a controversy upon an agreed statement of facts, plaintiff is entitled to a judgment, without costs and without disbursements, directing that the New York City Employees' Retirement System shall not allow

any member, at any time before he has attained the age of 70, credit for purchased service credit toward his 25-Year Career Pension Plan A eligibility under the provisions of subdivision k of section B3-36.6 of the Administrative Code.