JOHN E. POGGI et al., Respondents-Appellants, v CITY OF NEW YORK et al., Appellants-Respondents, and SAMUEL DeMILIA, Individually and as President of the Patrolmen's Benevolent Association of the City of New York, Inc., et al., Intervenors-Appellants.

First Department, July 2, 1985

### APPEARANCES OF COUNSEL

*Jay C. Cooke* of counsel (*Renee Modry* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants-respondents.

*Murray A. Gordon* of counsel (*James D. Bilik* with him on the brief; *Gordon, Shechtman & Gordon, P. C.,* attorneys), for respondents-appellants.

*Raymond E. Kerno* of counsel (*Joseph G. Metz* with him on the brief; *Richard Hartman,* attorney), for intervenors-appellants.

### OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiffs, eight retired superior officers of the Police Department of the City of New York, all of whom were members of the Police Pension Fund, Article 2 (Pension Fund) during their active service, seek to enjoin enforcement of section B18-27.1 (d) (1) of the Administrative Code of the City of New York which establishes a formula by which certain investment earnings of the Pension Fund are to be transferred to and allocated between the Police Superior Officers' Variable Supplements Fund (SOVSF) and the Patrolmen's Variable Supplements Fund (PVSF), as well as a declaration that the section is unconstitutional. The SOVSF provides variable supplemental payments to service retirees of the Pension Fund who retired as superior officers (Administrative Code § B18-80.0 *et seq.*), while the PVSF provides similar payments to service retired patrolmen (Administrative Code § B18-60.0 *et seq.*). Superior officers are defined as those members of the uniformed force who hold positions of the rank of sergeant or higher, or are detectives. (Administrative Code § B18-27.1 [a] [16].) Named as party defendants are the City of New York, the chairman of the board of trustees of the Pension Fund and the PVSF's trustees.

The Pension Fund is funded by contributions from its members and the City of New York. A member's contribution rate is calculated actuarily pursuant to statutory formula (Administrative Code §§ B18-22.0, B18-23.0) as of the time he joins the force so as to remain constant throughout his active service, and is unaffected by the Pension Fund's investment earnings. (Administrative Code § B18-22.0 [a] [1]; § B18-23.0 [d].) The method of calculating the city's contributions to the Pension Fund is defined by section B18-24.0. Subject to certain limited exceptions,

not here relevant, the city contributes lump-sum payments based upon an actuarial determination of the amounts necessary to cover the Pension Fund's present and anticipated liabilities for the payment of retirement and death benefits. (*See,* Administrative Code §§ B18-3.0 [10], B18-24.0.)

The methods of calculating the benefits payable by the Pension Fund for service retirement, disability and death are based, without regard to rank, upon fixed statutory factors, such as member contributions, salary and length of service. (*See,* Administrative Code §§ B18-38.0, B18-39.0, B18-45.0, B18-46.0, B18-47.0.) None of the benefits fluctuates with the Pension Fund's investment earnings. (Administrative Code §§ B18-38.0, B18-39.0, B18-45.0, B18-46.0, B18-47.0.) Moreover, the city is required to guarantee the payment of Pension Fund benefits without regard to whether its investments produce any earnings. (Administrative Code § B18-27.0 [a].)

At the time of joining the Pension Fund a member may elect service retirement eligibility upon the completion of a minimum period of either 20 or 25 years of service, or upon reaching 55 years of age. (Administrative Code §§ B18-41.0, B18-41.1.) Upon retirement, a member receives an allowance consisting of both an annuity and a pension portion which, taken together, equals the sum of one half of the member's annual earnable compensation at the time of retirement. (Administrative Code § B18-45.0 [1].) A member is also entitled to an additional retirement allowance equal to one sixtieth of the average amount earned per year between the date he became eligible to retire and the actual date of retirement for each year that he serves beyond the minimum period for service retirement eligibility. (Administrative Code § B18-45.0 [2] [a].)

In 1970 the State Legislature created two variable supplements funds, the SOVSF and the PVSF (L 1970, ch 876), as legal entities separate and distinct from the Pension Fund with the powers and privileges of a corporation (Administrative Code §§ B18-61.0, B18-64.0, B18-81.0, B18-84.0), for the purpose of receiving certain investment earnings of the Pension Fund. (Administrative Code §§ B18-27.1, B18-61.0, B18-81.0.) When, in a given fiscal year, as provided in Administrative Code § B18-27.1, that portion of the Pension Fund's earnings from assets invested in equities exceeds the hypothetical earnings which would have been generated by the investment of the same amount of assets in fixed income securities, the difference between these two amounts is transferred to the two variable

supplements funds.[1] These "transferable earnings" are apportioned in accordance with a formula set forth in section B18-27.1 (d) (1), which divides the earnings between the SOVSF and the PVSF in the same ratio that the active superior officers' total contributions to the Pension Fund bears to the active patrolmen's total contributions in the year the transferable earnings were generated. The trustees of the variable supplements funds are authorized to grant supplemental payments from the funds' assets to Pension Fund retirees in such form and amount as the trustees may in their discretion determine, subject to the standards of equity, fairness and prudent management. (Administrative Code §§ B18-63.0, B18-83.0.)

On or about April 24, 1975, the board of trustees of the Pension Fund passed a resolution authorizing the payment of transferable earnings to the variable supplements funds for the 1970-1971 and 1971-1972 fiscal years. Since active patrolmen made 74.169% and active superior officers 25.831% of the total contributions to the Pension Fund in 1970-1971, the $8,319,832 in transferable earnings for that fiscal year was divided between the SOVSF and the PVSF in the same percentages. Thus, the PVSF received $6,170,736 and the SOVSF received $2,149,096. In 1971-1972, $15,156,911 in transferable earnings was divided so that the PVSF received $10,998,612 (72.565%) and the SOVSF received $4,145,299 (27.435%). The Pension Fund's investments failed to yield transferable earnings for the fiscal years 1972-1973 through 1980-1981.

The PVSF's trustees authorized payments to eligible retirees in the amount of $40 per month commencing January 1, 1976 through December 31, 1981; the SOVSF's trustees authorized annual lump-sum payments to eligible retirees in the amount of $400 per year for the same time period. It is undisputed that these supplemental payments have been made to all eligible service retired patrolmen and superior officers.

■ ■ In seeking declaratory and injunctive relief, plaintiffs claim that the SOVSF is entitled to a larger proportionate share of transferable earnings than is allocated to that fund pursuant to section B18-27.1 (d) (1) and that the PVSF is entitled to a correspondingly smaller proportionate share. Specifically, plaintiffs contend that the allocation formula of section B18-27.1 (d) (1) impairs their pension benefits in violation of NY Constitu-

---

1. The additional equity investment earnings produced in a given year are transferred to the SOVSF and the PVSF only to the extent that these earnings exceed any cumulative losses from previous years in which the equity investment earnings were less than the hypothetical earnings that would have been produced by investment in fixed income securities.

tion, article V, § 7, and discriminates against them in violation of the equal protection clauses of the State and Federal Constitutions. After joinder of issue they moved for summary judgment. Defendants and the intervenor-defendants, officers of the Patrolmen's Benevolent Association of the City of New York, individually and in their representative capacity, cross-moved for summary judgment in their favor. Special Term, finding material issues of fact as to the manner in which the variable supplements funds are funded and administered, the extent to which member and employer contributions are allocated or credited to the funds, and the underlying nature of the supplements payable by the funds, denied both the motion and cross motions. The parties cross-appealed. Since all of Special Term's concerns are fully answered by reference to the statute which established the variable supplements funds, we conclude that there are no material triable issues of fact. Moreover, we find that Administrative Code § B18-27.1 (d) (1) is constitutional. Accordingly, we modify and grant summary judgment in favor of defendants and the intervenor-defendants.

New York Constitution, article V, § 7[2] preserves the benefits of the pension contract relationship rather than "naked pension rights *qua* rights" (*Mutterperi v Levitt,* 89 Misc 2d 428, 431, *affd* 41 NY2d 956). Thus, in order to prevail on their claim that the allocation formula of section B18-27.1 (d) (1) violates this provision of the State Constitution, plaintiffs must show that some benefit set forth in the pension contract of the Administrative Code is diminished or impaired. (*See, Hoar v City of Yonkers,* 295 NY 274; *Brown v New York State Teachers Retirement Sys.,* 25 AD2d 344, *affd* 19 NY2d 779; *Michael v Bellamy,* 80 AD2d 147, *appeal dismissed sub nom. Michael v Majority of Bd. of Trustees,* 55 NY2d 1036, *lv denied* 57 NY2d 603.) Plaintiffs are unable to make such a showing.

 It is undisputed that plaintiffs, 6 of whom are service-retired and 2 of whom are retired for disability, have always received the full amounts of their retirement allowances pursuant to the service retirement or disability provisions of the Administrative Code. As already noted, these benefits, as well as the other benefits of the Pension Fund contract, are calculated according to a formula of fixed statutory criteria, such as salary and length of service. (Administrative Code §§ B18-38.0, B18-39.0, B18-45.0, B18-46.0, B18-47.0.) None of the benefits

---

2. Article V, § 7 provides, "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

payable by the Pension Fund fluctuates with or depends in any way upon its investment earnings. (Administrative Code §§ B18-38.0, B18-39.0, B18-45.0, B18-46.0, B18-47.0.) Thus, section B18-27.1 (d) (1), which apportions investment earnings to the respective variable supplements funds, in no way diminishes or impairs any benefit set forth in the statutory Pension Fund contract.

The variable supplements law merely established a new non-pension supplement for Pension Fund retirees in addition to and independent of the retirement allowances provided in the pension contract. Indeed, the Legislature described the nature and purpose of the variable supplements funds "as a means whereby payments, not constituting a pension or retirement allowance, may be made at the discretion of the board * * * to eligible pension fund beneficiaries as a supplement to benefits received by them under article one or two of this title." (Administrative Code § B18-61.0 [b]; § B18-81.0 [b].)

In creating the variable supplements funds the Legislature expressly provided that they "shall not be, and shall not be construed to constitute, a pension or retirement system or fund" (§ B18-61.0 [b]; § B18-81.0 [b]), and that the payments from these funds "shall not constitute a pension or retirement allowance or benefit under [the Pension Fund] or otherwise." (Administrative Code § B18-63.0 [b] [2] [ii]; § B18-83.0 [b] [2] [ii]; *see also,* § B18-61.0 [b]; § B18-81.0 [b].) The Legislature further declared that the variable supplements payments "shall not create or constitute membership in a pension or retirement system and shall not create or constitute a contract with any pension fund beneficiary or with any member of [the Pension Fund]". (Administrative Code § B18-63.0 [b] [2] [i]; § B18-83.0 [b] [2] [i].) Thus, the controlling statutory language clearly shows that the variable supplements payments are independent of, and were not intended to diminish or impair, any benefit under the Pension Fund contract. In *Matter of Maye (Bluestein)* (40 NY2d 113, 115-116), the Court of Appeals recognized the nonpension nature of variable supplements payments when, in analyzing similar variable supplements provisions in the New York City Fire Department Pension Fund Law,[3] it noted, "The funds function as a means whereby payments, not constituting a pension or retirement allowance, may be made to eligible pension fund beneficiaries as a supplement to benefits received by them under article 1 or 1-B of title B of the Administrative Code".

---

3. Administrative Code §§ B19-40.0 *et seq.,* B19-60.0 *et seq.*

Plaintiffs argue that while the section B18-27.1 (d) (1) formula allocating transferable earnings from the Pension Fund to the SOVSF and the PVSF in proportion to the contributions made to that Fund by active superior officers and patrolmen is based upon the salary of active members, it fails to take into account their over-all length of service. Plaintiffs assume, of course, that superior officers serve longer and, therefore, contribute over a greater span of years than patrolmen. They also claim that because length of service is a factor in computing their Pension Fund service retirement allowances, it should likewise be a factor in computing their variable supplements. Accordingly, plaintiffs argue, superior officers should be entitled to a greater share of the transferable earnings than that provided in section B18-27.1 (d) (1).

Even assuming, arguendo, that superior officers do contribute more over a career to the Pension Fund than patrolmen, plaintiffs' argument still fails because the statutory pension contract does not contain any benefit provision which requires future supplement payments to be calculated on the basis of length of service. As already noted, unless plaintiffs can identify a benefit in the pension contract which is impaired by section B18-27.1 (d) (1), NY Constitution, article V, § 7 is not, as a matter of law, violated. (*See, Hoar v City of Yonkers,* 295 NY 274, *supra; Brown v New York State Teachers Retirement Sys.,* 25 AD2d 344, *supra; Michael v Bellamy,* 80 AD2d 147, *supra.*)

Moreover, except to the extent that it is required to pay interest on members' accumulated contributions (Administrative Code § B18-29.0),[4] the Pension Fund is not required by any provision of the statutory pension contract to pay investment earnings to its members. In fact, Administrative Code § B18-27.0 requires that all Pension Fund investment income, except for transferable earnings which, as already noted, are otherwise provided for under section B18-27.1, be used first, to pay into the funds of the Pension Fund the amounts of regular interest required to be paid; second, to pay off losses on the Pension Fund's stock investments; and third, to reduce the city's normal contributions to the Pension Fund. Thus, investment earnings are not a statutory component of Pension Fund benefits. Members have a contractual right only to the benefits defined in the Administrative Code, none of which is diminished or impaired by the allocation formula of section B18-27.1 (d) (1). Furthermore, since it neither directs the Pension Fund's board of trustees to invest any of the Fund's assets in a particular market, nor

---

**4.** The city is required to pay the statutory rate of interest on member contributions irrespective of whether the Pension Fund produces any investment earnings. (Administrative Code § B18-27.0 [a].)

deprives the board of the freedom to exercise its own independent judgment in investing the Fund's assets, section B18-27.1 (d) (1) does not impair the security of the Pension Fund's assets from which these benefits are paid. (*Cf. Sgaglione v Levitt,* 37 NY2d 507, 514.) Thus, section B18-27.1 (d) (1) does not contravene NY Constitution, article V, § 7.[5]

Plaintiffs allege that section B18-27.1 (d) (1) denies superior officers equal protection of the laws by providing a formula for the allocation of transferable earnings to the variable supplements funds which results in the payment by the PVSF of larger nonpension supplemental benefits to eligible retired patrolmen than the SOVSF is able to pay to eligible retired superior officers. From 1976 through 1981 retired patrolmen received $80 per year more in nonpension supplement payments than retired superior officers.

In support of their argument plaintiffs also rely upon an independent actuarial calculation made in 1975 showing that the amounts previously transferred to the variable supplements funds would permit the PVSF to make larger supplemental payments to retired patrolmen over their lifetimes than the SOVSF would be able to make to retired superior officers over the same period. For instance, the amounts transferred to the PVSF for 1970-1971 and 1971-1972 would permit it to make annuity payments to eligible retired patrolmen in the amount of $48 per month for life,[6] while the amounts transferred to the SOVSF for the same years would permit annuity payments of only $23 per month for life to eligible retired superior officers. The allocation formula, which is based upon contributions by active members, necessarily yields such a result because, for example, the ratio of active patrolmen (24,539 or 78.2%) to active superior officers (6,841 or 21.8%) for the fiscal year 1971-

---

**5.** The alarm sounded by the dissent that the pensions of all public servants will henceforth be at risk since excess investment earnings may be subjected to legislative incursions as a source of revenue for general purposes ignores the distinction between a distribution of such earnings to the class for whose benefit the pension system was created, and an invasion of the funds for unrelated purposes. While the former may give rise to a claim, as here, of denial of equal protection, it does not logically compel acceptance of the latter.

**6.** Administrative Code § B18-63.0 (b) (1); § B18-83.0 (b) (1), which establish the variable supplements funds, however, expressly provide that "[n]o pension fund beneficiary shall have a right to receive variable supplements except to the extent, in the manner and for the period authorized by the board in the exercise of its discretion pursuant to this article and any such supplements granted may at any time be discontinued by the board in the exercise of such discretion."

1972 is greater than the ratio of retired patrolmen (2,220 or 56.1%) to retired superior officers (1,734 or 43.9%).[7]

It is well settled that a statute is entitled to a strong presumption of constitutionality, especially where that statute confers monetary benefits. (*Schweiker v Wilson,* 450 US 221, 238; *Mathews v De Castro,* 429 US 181, 185.) Where, as here, the statute being challenged confers an economic benefit, its constitutionality under the equal protection clause is determined by application of the rational basis test. (*See, e.g., Schweiker v Wilson,* 450 US, at p 230; *Mathews v De Castro,* 429 US, at p 185; *Dandridge v Williams,* 397 US 471, 485.)[8] Since the statute is presumed to be constitutional, "[o]ne who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (*Lindsley v Natural Carbonic Gas Co.,* 220 US 61, 78-79; *Lighthouse Shores v Town of Islip,* 41 NY2d 7, 12; *Matter of Malpica-Orsini,* 36 NY2d 568, 570-571, *appeal dismissed sub nom. Orsini v Blasi,* 423 US 1042.)

Under the rational basis test a statutory classification is constitutionally permissible if it is rationally related to any legitimate State objective. (*Western & S. Life Ins. Co. v Board of Equalization,* 451 US 648, 668; *Schweiker v Wilson,* 450 US, at p 230; *Dandridge v Williams,* 397 US 471, 485, *supra; Matter of Tolub v Evans,* 58 NY2d 1, 8, *appeal dismissed* 460 US 1076; *Lighthouse Shores v Town of Islip,* 41 NY2d, at p 12; *Montgomery v Daniels,* 38 NY2d 41, 61.) A statute violates the equal protection clause only when "the classification rests on grounds wholly irrelevant to the achievement of the State's objective." (*McGowan v Maryland,* 366 US 420, 425.)

■ Plaintiffs' denial of equal protection claims are without merit since the allocation formula of section B18-27.1 (d) (1) classifies benefits not merely on the basis of rank, but, also, on need. The Legislature, which is presumed to have "investigated

---

7. The number of retired patrolmen and superior officers used in these calculations represent those officers who retired from service on or after October 1, 1968 and were on the retirement rolls as of June 30, 1975.

8. "Strict scrutiny" has no application because Administrative Code § B18-27.1 (d) (1) does not interfere with the exercise of a fundamental right and pension beneficiaries are not a suspect class. (*See, Tron v Condello,* 427 F Supp 1175, 1192.) Fundamental rights include, *inter alia,* 1st Amendment rights, the right to vote, the right of interstate travel, the right to privacy and the right of procreation. (*See, Massachusetts Bd. of Retirement v Murgia,* 427 US 307, 312, n 3, and cases cited therein.) Suspect classes include, *inter alia,* classifications based upon race, alienage and ancestry. (*See, Massachusetts Bd. of Retirement v Murgia,* 427 US, at 312, n 4, and cases cited therein.)

and found facts necessary to support the legislation" (*Matter of Malpica-Orsini,* 36 NY2d, at p 571; *see also, Lighthouse Shores v Town of Islip,* 41 NY2d, at p 11; *I.L.F.Y. Co. v Temporary State Hous. Rent Commn.,* 10 NY2d 263, 269, *appeal dismissed* 369 US 795), could rationally and reasonably find that retired patrolmen, who, on the average, receive smaller service retirement allowances than retired superior officers, have a greater need for the larger supplemental payments than retired superior officers. Superior officers earn a significantly higher average salary than patrolmen,[9] and the retirement allowances of both groups are directly proportional to their earnable annual compensation at the time of retirement (Administrative Code § B18-45.0).

A statute which allocates larger monetary benefits to those with greater need does not violate the equal protection clause because such a classification is rationally related to a legitimate State interest. (*See, Schweiker v Wilson,* 450 US, at pp 238-239; *Califano v Boles,* 443 US 282, 296; *Jefferson v Hackney,* 406 US 535, 546-547.)[10] Legislative bodies have discretion in deciding how to allocate limited monetary benefits. (*Schweiker v Wilson,* 450 US, at p 238.) That some retired superior officers may have a greater need for supplemental benefits than some retired patrolmen does not render the variable supplements law unconstitutional. As the Supreme Court stated in *Dandridge v Williams* (397 US 471, 485, *supra*): "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' *Metropolis Theatre Co.* v. *City of Chicago,* 228 U.S. 61, 69-70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan* v. *Maryland,* 366 U.S. 420, 426."

9. As of June 30, 1977, the average annual salary of superior officers was $23,244, while the average annual salary of patrolmen was $17,033.

10. In any event, since the variable supplements payments do not constitute a pension benefit, and since the Pension Fund is not even required to distribute excess investment earnings, an allocation of such payments pursuant to a formula which correlates the ratio of collective contributions by active patrolmen to those of active superior officers in the year the excess earnings were generated with the ratio of distribution of such earnings is not, as the dissent argues, arbitrary.

Since a finding that retired patrolmen require larger nonpension supplements than retired superior officers is reasonably based, section B18-27.1 (d) (1) accomplishes the legitimate objective of providing larger supplements to the group with the greater need and, therefore, does not deny superior officers equal protection of the laws.

Accordingly, the order of the Supreme Court, New York County (Israel Rubin, J.), entered August 11, 1982, which denied plaintiffs' motion and defendants' and the intervenor-defendants' cross motions for summary judgment, should be modified, on the law, without costs or disbursements, the cross motions granted, Administrative Code § B18-27.1 (d) (1) declared constitutional and, except as thus modified, affirmed.

Asch, J. (dissenting). While the majority opinion reflects painstaking and logical analysis, I cannot agree with it. That is because I do not accept the basic premise upon which it rests. To me, it is clear that what the court is faced with in this instance is a not so well-disguised unconstitutional deprivation of respondents' pension benefits. It is axiomatic in law that, what may not be done directly, cannot be done by indirection. If this court ratifies the scheme of the Legislature to take away from one group of police officers and give to another group of police officers what has been traditionally considered a pension benefit, the net result will be to emasculate NY Constitution, article V, § 7. The pensions of *all* public servants will henceforth be at risk. It is entirely conceivable, since these benefits are no longer protected against legislative incursions, that a State government, desperate to find new sources of revenue, may well use these funds for general public purposes.

Contrary to the findings of the court below, the parties do not disagree concerning the nature of the formulae for the allocation or crediting of member and employer contributions to the Variable Supplements Funds (VSF). Nor do defendants nor intervenors actually deny in their briefs that the average superior officer-retiree's contributions and those made on his behalf exceed the average patrolman-retiree's contributions. The city's own actuary admitted this fact. There is no significant issue raised regarding the amounts distributed from the VSF. The one critical question which remains is the legal issue of whether the allocation formula, in light of the superior officers' greater contributions compared with those of patrolmen violates NY Constitution, article V, § 7 and equal protection guarantees of the Federal and State Constitutions. I believe that they do and, hence, I must dissent.

New York Constitution, article V, § 7 provides as follows: "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." It does not seem necessary to recite the numerous cases which hold that this constitutional mandate requires judicial invalidation of legislation which impairs the pension contract between public employer and employee. With regard to the specific problem before us, it is settled that the basis for calculating pension benefits cannot be changed in respect of incumbents (*Birnbaum v New York State Teachers Retirement Sys.,* 5 NY2d 1; *Kleinfeldt v New York City Employees' Retirement Sys.,* 36 NY2d 95; *Kranker v Levitt,* 30 NY2d 574). Where "statutory changes in the computation or availability of [pension] benefits * * * were applied retroactively to prior members of a public retirement system, they were held unconstitutional" (*Public Employees Fedn. v Cuomo,* 62 NY2d 450, at pp 459-460).

The contractual relationship created by membership in the police department Pension Funds is governed by the central principle that the level of benefits paid by the plans and the amount of the members' and city's contributions to the plans will be based on the longevity of service and the salary levels of the members. Service disability and death benefits in Article 1 and Article 2 are virtually exclusively a function of years of service and salary level of the member involved. Similarly, contributions are made to the two Pension Funds by the city on behalf of each member, and by the member, based upon salary. Contributions to the Pension Funds are not segregated by rank, nor is the size of the contribution made on behalf of any member related in any way to the member's rank.

It is not controverted that the typical individual who retires as a superior officer has contributed, and has had contributions made in his behalf, to the Pension Funds in greater amounts on average than one who retires as a patrolman. By ignoring length of service, the allocation plan contained in Administrative Code of the City of New York § B18-27.1 (d) (1), in a manner directly analogous to the situations in *Birnbaum (supra)* and its progeny, changes the basis on which police department pension benefits are to be calculated, long after the pension contributions upon which the earnings were generated have been paid into the Article 2 Pension Fund. This disadvantages all superior officers in favor of all patrolmen, and thus violates NY Constitution, article V, § 7.

It is frivolous to treat VSF law benefits as "nonpension" benefits. The VSF's are included in the Police Department (PD) Pension Funds; they also are funded by Pension Fund income; and VSF benefits are payable only to PD Pension Fund retirees. Moreover, generally, local legislation cannot bestow money benefits upon individuals since no city may "give or loan any money or property to or in aid of any individual" (NY Const, art VIII, § 1, ¶ 1). An exception is made for "increasing the *pension* benefits payable to retired members of a police department" (NY Const, art VIII, § 1, ¶ 2; emphasis added). Absent this exception, supplemental benefits, such as provided by the VSF law, "would be an unconstitutional gift of public funds" (*Matter of Rivington v Lowery,* 70 Misc 2d 155, 157, *affd* 41 AD2d 703, *lv denied* 32 NY2d 613). The effect of article 8, § 1, is that VSF law benefits cannot be deemed "nonpension" payments because they are invalid unless they are "increasing the pension benefits payable" to police department retirees.

This is not negated by the VSF law declaration that VSF benefit payments are not "a pension or retirement allowance" (Administrative Code § B18-61.0 [b]; § B18-63.0 [b]; § B18-81.0 [b]; § B18-83.0 [b]). The purpose of such declaration is expressly stated to be to reserve the legislative right to amend or repeal the VSF law (Administrative Code § B18-61.0 [b]; § B18-81.0 [b]). That a benefit is thus made amenable to future change or repeal, however, does not mean that the benefit, during the period it is in effect, was not a supplemental pension benefit subject to the pension "laws and conditions" then in effect (*see, Public Employees Fedn. v Cuomo, supra,* at pp 461-462).

The ability to change or repeal the VSF law, which was the purpose of the VSF law exclusionary language, cannot be gainsaid, but does not vitiate the effect of NY Constitution, article V, § 7, in respect of benefits accruing before such change or repeal. *Matter of Maye (Bluestein)* (40 NY2d 113) cited by the majority, is not to the contrary. That case did not involve any issue concerning the nature of VSF law benefits. The reference to such benefits "not constituting a pension or retirement allowance" (*supra,* at p 115) paraphrases the VSF law and is dictum.

The argument, that the implementation of Administrative Code § B18-27.1 (d) (1) here complained of does not impair or diminish the VSF supplemental pension benefits, proceeds from the erroneous assumption that article V, § 7, is violated only if the VSF law diminishes or impairs preexisting benefits levels. However, any change (to the prejudice of incumbents) in the method of calculating pension benefits violates NY Constitu-

tion, article V, § 7. Thus, a pension benefit based upon an altered method of calculation is invalid even if the benefit level after the change is not less than the level was before the change. The impairment or diminution is measured by the impairment or diminution "in the computation or availability" of pension benefits (*Public Employees Fedn. v Cuomo, supra,* at p 459). In this understanding of article V, § 7, the action here complained of works a pension benefit loss. For it is conceded that the VSF law deviation from the obtaining, and therefore contract, mode of calculating pension benefits causes a substantial loss of benefits. That loss is the impairment of benefits proscribed by article V, § 7.

Article V, § 7, imposes the constraints of a trustee relationship upon the Legislature when it legislates the investment of pension funds in particular securities or their expenditure for any purpose (*cf. Sgaglione v Levitt,* 37 NY2d 507). The Legislature's fiduciary responsibility as to pension funds cannot be exercised, as here, in a way that provides by design, not just by chance as a matter of actuarial experience, for the expenditure of such funds, contributed by or on behalf of one individual, for the payment of benefits to another individual.

In addition to violating article V, § 7, the allocation of transferable earnings between the Superior Officers' (SO) VSF and the Patrolmen's (PTL) VSF provided by section B18-27.1 (d) (1) also violates the equal protection clauses of the New York and United States Constitutions. Section B18-27.1 (d) (1) is constitutionally invalid because it arbitrarily distinguishes between superior officers and patrolmen in a manner which severely prejudices the rights of superior officers. Disparate treatment can violate the equal protection clause even if the nature of the difference is not the imposition of a burden on one group, but rather, as in this case, the grant of a preference to another group (*Matter of Abrams v Bronstein,* 33 NY2d 488, 492-493; *see also,* Sunstein, *Naked Preferences and the Constitution,* 84 Colum L Rev 1689 [1984]). The equal protection clause is aimed squarely at eliminating the favoring of one group's interests over another's merely because the favored group enjoys greater political influence.

Conspicuously absent is any indication in the statute or legislative history which might provide some illumination on what legitimate goal the Legislature meant to accomplish through the allocation formula contained in section B18-27.1 (d) (1). It is asserted by defendants and intervenors that the Legislature meant to allocate the VSF proceeds in favor of those retirees

with the greater economic need, and therefore chose a formula favoring those retiring in the rank of patrolman.

Even if, arguendo, it is assumed that the goal of the allocation formula in Administrative Code § B18-27.1 (d) (1) was to confer a greater benefit on the more needy retirees, the provision must be struck down because it bears no rational relationship to this goal.

The payment of disparate salaries or benefits to public employees has often been held to violate an employee's right to equal protection where the basis for treating distinct classes of employees differently has been found to be arbitrary or not reasonably related to the goal sought (*Matter of Abrams v Bronstein, supra; Weissman v Evans,* 56 NY2d 458).

Like the bases for distinction used by the public employers in *Abrams* and *Weinstein* (*supra*) to distinguish those employees who would receive a benefit from those who would not, the criterion of rank employed by section B18-27.1 (d) (1) to distinguish those members of the PD Pension Fund who will receive a substantial supplemental pension benefit from those who will receive a much smaller supplemental benefit bears no reasonable relationship to any legitimate governmental purpose. The one purpose posited by defendants and intervenors, the alleged greater need of some retirees, is not reasonably served by section B18-27.1 (d) (1). Contrary to the assertions of defendants and intervenors, there is no basis for assuming that retired patrolmen have greater needs than retired superior officers. The average patrolman-retiree is younger than his superior officer counterpart, and is therefore more likely to embark on a second career after retirement, and less likely to be dependent solely on his police pension.

Nor can it be assumed that a patrolman's final salary, and thus his pension, will be smaller than a superior officer's. The only distinction is between patrolmen and superior officers as a matter of "personal preference."

In any event, even if the "equal protection" provisions of the United States and New York State Constitutions are not violated by Administrative Code § B18-27.1 (d) (1), the promise of NY Constitution, article V, § 7, that pension or retirement benefits "shall not be diminished or impaired", renders invalid the statute herein considered by the court.

FEIN, KASSAL and ROSENBERGER, JJ., concur with SULLIVAN, J. P.; ASCH, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on August 11, 1982, modified, on the law, without costs and without dis-

bursements, the cross motions granted, Administrative Code § B18-27.1 (d) (1) declared constitutional, and, except as thus modified, affirmed.