PHIL CARUSO, as President of the Patrolmen's Benevolent Association of the City of New York, et al., Respondents, v NEW YORK CITY POLICE DEPARTMENT PENSION FUNDS, ARTICLE 1 AND ARTICLE 2, et al., Appellants.

First Department, April 5, 1988

## APPEARANCES OF COUNSEL

*W. Bernard Richland* of counsel *(Julie Prag* with him on the brief; *Botein Hays & Sklar,* attorneys), for respondents.

*Doron Gopstein* of counsel *(Paul Rephen, Leonard Koerner* and *Edward F. X. Hart* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellants.

## OPINION OF THE COURT

SANDLER, J. P.

Plaintiffs, eight officers of various police unions and also trustees of the New York City Police Department Pension Funds (pension fund) seek in this action recovery of litigation expenses incurred in several lawsuits arising out of a disagreement among trustees of the pension fund as to the proper construction of General Municipal Law § 207-k, the so-called "Heart Bill", as well as recovery of litigation expenses incurred in the instant action.

The Board of Trustees of the Police Pension Funds is composed of 12 members, 8 union officials with weighted votes totaling 6, and 4 city officials with weighted votes also totaling 6 (Administrative Code of City of New York § 13-216 [a]). Except for decisions on disability applications, all actions of the Board of Trustees must be taken pursuant to a resolution by a majority vote of the board totaling 7 (Administrative Code § 13-216 [b]). Where an accident disability pension is sought, a tie vote results in retirement on ordinary disability *(Matter of City of New York v Schoeck,* 294 NY 559).

This lawsuit has its genesis in an opinion issued in 1979 by the Corporation Counsel on the proper interpretation of the Heart Bill. Departing from the interpretation previously advanced by the Corporation Counsel, in accordance with which disability applications had been determined by the Board of Trustees for some years, the opinion concluded that the rebuttable presumption set forth in the Heart Bill did not extend to proof that the heart disease was the result of an accident, and that, therefore, the burden remained upon the employee to demonstrate that the heart ailment was the result of a particular, sudden and unexpected event.

The adoption by the public members of the Board of Trustees of this new interpretation resulted in the denial of disability retirement benefits to various applicants who previously would have received such benefits, and gave rise to the several lawsuits for which the plaintiffs now seek recovery of litigation expenses.

First, in response to the decision of the police trustees to refrain from voting on Heart Bill applications, the Corpora-

tion Counsel commenced a CPLR article 78 proceeding to compel the police trustees to attend meetings of the Board of Trustees and to vote on all matters, including petitions for disability retirement. This proceeding resulted in a court order granting the requested relief. Giving rise to the principal lawsuit with which we are concerned, an article 78 proceeding was then commenced by the police trustees, converted by the trial court into a declaratory judgment action, which sought a declaration that the presumption set forth in the Heart Bill, contrary to the recent opinion of the Corporation Counsel, extended to proof that the heart disease was the result of an accident. *(Matter of De Milia v McGuire,* NYLJ, Nov. 20, 1979, at 6, col 1.) That lawsuit resulted in a determination by the Court of Appeals (two Judges of that court dissenting), sustaining the interpretation sought by the police trustees. *(Matter of De Milia v McGuire,* 52 NY2d 463.) Finally, and during the pendency of the declaratory judgment action, the police trustees sought in an article 78 proceeding a determination prohibiting the chairman of the board from directing, in the cases of retirement applicants as to whom the board was deadlocked, payment of ordinary pensions rather than the full wages to which they claimed to be entitled as members of the police force whose retirement had not been ordered by a majority of the pension funds. The petition was dismissed in the trial court. No appeal was taken, petitioners (plaintiffs herein) concluding that further action should be deferred pending the Court of Appeals decision in the principal lawsuit.

Following the decision of the Court of Appeals in *Matter of De Milia v McGuire (supra),* plaintiffs unsuccessfully sought authorization from the Board of Trustees for reimbursement of some $80,000 in litigation expenses which had been paid by five police unions to their privately retained counsel in connection with the several litigations. It appears undisputed that plaintiffs had not previously sought authorization to retain private counsel from the Board of Trustees prior to the lawsuits, and at no time sought from the Corporation Counsel or the Board of Estimate authorization to retain private counsel or reimbursement of such expenses.

This action followed the rejection of a resolution authorizing reimbursement by the Board of Trustees of the pension funds. A motion to dismiss on the ground that the plaintiffs had never been authorized to retain private counsel was denied by Special Term in an extensive opinion which concluded that

plaintiffs had "brought the lawsuits as trustees of the pension funds in circumstances where they could not be represented by the Corporation Counsel and were thus justified in retaining independent counsel" *(Matter of Caruso v New York City Police Dept. Pension Funds,* 122 Misc 2d 576, 583-584). Several years later, plaintiffs moved successfully pursuant to CPLR 3212 for partial summary judgment on the issue of liability, resulting in the orders from which the defendants now appeal.

Analysis of the issue presented on this appeal appropriately starts with consideration of those sections of the New York City Charter relating to legal representation of city agencies and officials and employees of the city. New York City Charter § 394 (a) provides: "Except as otherwise provided in this chapter or other law, the corporation counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested."

Section 395 of the City Charter provides as here pertinent: "No officer or agency, except as provided in this chapter or otherwise especially provided, shall have or employ any attorney or counsel, except where a judgment or order in an action or proceeding may affect him or them individually or may be followed by a motion to commit for contempt of court, in which case he or they may employ and be represented by attorney or counsel at his own or their own expense."

What clearly appears from the face of these two sections of the City Charter, the only ones called to our attention that have any relevance to the issue presented, is that they provide no authority for a city agency or official to retain private counsel at the expense of the city. Indeed, section 395 explicitly prohibits a public official of the city from retaining private counsel except under clearly specified circumstances, not here presented, and in those circumstances permits private counsel to be retained only at the personal expense of the official.

Notwithstanding the City Charter provisions, the principle has developed in connection with them and comparable laws of other local governments, that under carefully defined circumstances an implied power to retain private counsel at public expense will be found. What remains the most definitive statement of the governing principles was set forth by the Court of Appeals in *Cahn v Town of Huntington* (29 NY2d 451).

The issue in *Cahn (supra)* arose out of an article 78 proceed-

ing brought by the Town Board of Huntington to prohibit the Planning Board and the chairman it designated from interfering with the person named by the Town Board to sit on the Planning Board, and to require the Planning Board to recognize that person as chairman. The Town Attorney of Huntington represented the Town Board. Concluding that the Town Attorney who usually handled the Planning Board's litigation could not, under the circumstances, also represent the Planning Board, the Planning Board adopted a resolution retaining plaintiff to act as its attorney in the lawsuit. The Supreme Court sustained the Town Board as to its authority to name the chairman of the Planning Board, but, on a counterclaim brought by the Planning Board, ruled in favor of the Planning Board to the extent of directing the Town Board to return to the Planning Board the supervision, control and management of the planning staff and planning department. The Planning Board thereafter adopted a resolution approving payment to its privately retained attorney of the amount billed by him.

An action was commenced by the Planning Board's private counsel against the Town of Huntington when the Town Board failed to authorize payment of the claim. In that lawsuit, as set forth in the *Cahn* opinion *(supra)*, the town contended, relying on section 65 of the Town Law, that since the plaintiff was not retained by the Town Board and the Planning Board was not authorized by the Town Board to retain him, the Town Board was not obligated to pay plaintiff's legal fees. Although conceding that the statute did not specifically confer upon the Planning Board the right to retain counsel, plaintiff argued that the Planning Board possesses implied authority to employ special counsel under the circumstances there presented. In its opinion the Court of Appeals reviewed the existing authorities, explored the relevant policy considerations, and set forth the controlling principles (29 NY2d 451, 454-456, *supra*).

Preliminarily, the opinion observed *(supra,* at 454-455): "It is well-settled law that an attorney may not be compensated for services rendered a municipal board or officer unless he has been retained in accordance with statutory authority. *(Seif* v. *City of Long Beach,* 286 N. Y. 382; *Lyddy* v. *Long Is. City,* 104 N. Y. 218; *Konnoson* v. *City of New York,* 254 App. Div. 378, affd 281 N. Y. 716; *People ex rel. French* v. *Town,* 1 App. Div. 127; Ann. 2 A.L.R. 1212; 56 Am. Jur. 2d, Municipal Corporations, § 279.) In other words, the power to employ counsel by a municipal board or officer is not deemed to be incidental to

such board or officer. Rather, express authority, either by statute or by appropriate resolution of the governing body, must be shown to justify the retention of an attorney by a municipal board or officer. *(Matter of Kay* v. *Board of Higher Educ. of City of N. Y.,* 260 App. Div. 9; *Reynolds* v. *Village of Ossining,* 102 App. Div. 298; *People ex rel. Sherrill* v. *Guggenheimer,* 47 App. Div. 9; see, also, 10 McQuillin, Municipal Corporations [1966 ed.], § 29.16, pp. 280-281.) The salient purpose underlying this rule is, of course, to ensure responsible municipal government. Not only is it designed as a safeguard against the extravagance or corruption of municipal officials, as well as against their collusion with attorneys (cf., *Seif* v. *City of Long Beach,* 286 N. Y. 382, *supra,* at pp. 387-388; *Dickinson* v. *City of Poughkeepsie,* 75 N. Y. 65, 74-75; *McDonald* v. *Mayor of City of N. Y.,* 68 N. Y. 23, 28-29), but also, to prevent confusion and contradiction in the direction of the municipality's litigation (cf. *Matter of Collins* v. *Village of Saratoga Springs,* 70 Hun 583, affd. 140 N. Y. 637; *Adee* v. *Arnow,* 91 Hun 329)."

Notwithstanding this well-established rule of law, the opinion went on to delineate circumstances under which an implied authority to employ counsel may be found *(supra,* 29 NY2d, at 455): "Notwithstanding lack of specific statutory authority, a municipal board or officer possesses implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where the municipal attorney refused to act, or was incapable of, or was disqualified from, acting. (See, e.g., *Matter of Fleischmann* v. *Graves,* 235 N. Y. 84, 90-91; *Matter of Hiscox* v. *Holmes,* 239 App. Div. 602; *Judson* v. *City of Niagara Falls,* 140 App. Div. 62, affd. 204 N. Y. 630; see, also, Ann. 75 ALR 2d 1339, § 4, pp. 1348-1350; cf. *Rockefeller* v. *Taylor,* 69 App. Div. 176.) This authority is necessarily implied in order to enable the board to effect the purposes of its creation and to allow it to properly function. *(Matter of Fleischmann* v. *Graves, supra,* at p. 91; cf. 10 McQuillin, Municipal Corporations, § 29.11, pp. 257-258.) It should be abundantly clear that in view of the stringent requirements that must be satisfied, the policy underlying the general rule of express authority is certainly not compromised by this exception."

Finally, the opinion concluded *(supra,* at 455-456) that under the circumstances presented "the Planning Board had implied authority to engage the services of an attorney for which the

Town Board should be held liable. In the article 78 proceeding instituted by the Town Board against the Planning Board, the Huntington Town Attorney represented the Town Board. He could not, therefore, under the circumstances, represent the Planning Board. The only possible recourse for the Planning Board was to employ special counsel, which it did. Only in this manner could the legal issues raised in said proceeding be properly resolved."

Preliminarily, we are not prepared to accept as a basis for determining this case defendants' contention that the principle of implied authority to retain private counsel set forth in *Cahn (supra)* is necessarily inapplicable to a dispute between members of a board, commission or fund, and the entity to which the members belong. It is true that our attention has been called to no case applying that principle which involved litigation initiated by members of a board or comparable entity seeking to review a determination of the board, and in which the board itself was represented by the legal officer of the governmental unit involved. The absence of such cases may well suggest that circumstances permitting application of the principle of implied authority arise rarely in connection with such disagreement, but at least in theory it is possible to envisage circumstances in which it may plausibly be argued that individual board members would have an interest in such a lawsuit that would make appropriate the finding of such implied authority.

Assume a dispute between a member or members of a board and the board itself, as to whether the right to employ assistants to individual members authorized by law is vested in the individual member or the board as a whole, and in which the legal office of the governmental unit involved is of the opinion that the power to make such appointments resides in the board. Although we hesitate to decide issues not before us and as to which we have not had the benefit of argument, it would seem at least arguable that in such a situation, assuming the dispute to be a genuine one, the individual member or members might have the right to seek review of a contrary board determination and to retain counsel for that purpose.

The threshold issue here seems to us to be whether individual members of a board or fund have standing to seek judicial review of a determination adjudicating the rights of individual parties or, as in this case, deciding the level of benefits to which an applicant is entitled. As a general proposition, the

notion that individual members of such boards have the right to seek judicial review of determinations with which they disagree seems extremely dubious, and our attention has been called to no case sustaining such standing in which the question was disputed. When we consider the number of boards, commissions and funds which, as part of their routine duties, adjudicate the rights of individual parties or the claims of applicants for benefits, the concept that dissenting members have a basic right to seek judicial review of determinations with which they disagree, and to do so at the public expense, is a startling one indeed.

Illustratively, it is not easy to accept that members of the Loft Board, whose members include representatives of conflicting interest groups in addition to public members, have the right to seek in their own names judicial review of a determination that a building does or does not come within the coverage of the Loft Board. Nor do we find more persuasive the idea that trustees of pension funds, by the mere fact of that status, have the right to litigate determinations affecting the level of benefits of applicants whenever they disagree with the interpretation of the law or the application of the law to the facts of the Board of Trustees of the fund in which they are trustees.

Implicitly recognizing the implausible nature of such a general claim of standing, plaintiffs' counsel appear to argue that the right of these trustees to judicial review of determinations of the board denying disability benefits in Heart Bill cases should be recognized here because of special circumstances. We find unpersuasive the view that standing to seek judicial review which would not normally obtain may be found because public members of the board have changed their opinion of the interpretation of a relevant law, whether they did so on the basis of an opinion by the Corporation Counsel or as a result of their own independent reconsideration. Nor do we believe that such standing can be premised on the claim that the Corporation Counsel's opinion here was meritless, a claim that is in any event particularly untenable in view of its acceptance by two Judges of the Court of Appeals.

Notwithstanding our substantial doubts as to the existence of standing on the part of individual board or fund members to seek in their own capacity as members review of determinations of the board or fund, we think it would be inappropriate to state that standing may never be found under any circum-

stances. Our reluctance to make such a general pronouncement arises from the possibility that there may be circumstances in which an issue dividing a board or fund may involve a determination important to the functioning of the entity which would not otherwise be reviewable.

In this connection, we observe that in *Michael v Bellamy* (80 AD2d 147, *appeal dismissed* 55 NY2d 1036) a single trustee of the Board of Trustees of the New York City Employees Retirement System, represented by the Corporation Counsel, successfully challenged an interpretation of the relevant law by the Board of Trustees that extended to members of the system a right which the individual trustee believed was not authorized by law. The Board of Trustees was in turn represented by private counsel, and it is apparent that no objection was taken by either party to the legal representation of the other, and that the majority of the board did not challenge the standing of the individual trustee to seek review of the determination. It is suggested in the defendants' brief that the action in *Michael v Bellamy (supra)* should perhaps have been brought in the name of the city rather than in the name of the individual trustee, and this may well be right. We are not, however, prepared to exclude the possibility that there may be determinations that would not otherwise be reviewable as to which an argument meriting serious consideration could not be presented that individual members of a board or fund should have standing to seek judicial review.

What seems to us decisive here is that the determinations of the pension fund in issue were in fact reviewable in article 78 proceedings by the individual applicants who were adversely affected. Such determinations are, of course, commonly reviewed in this court from time to time in article 78 proceedings brought by aggrieved applicants who are normally represented by counsel retained by one or more of the police unions. If it were the judgment of the officers of the police unions that the unusual character of the issue presented and its importance made advisable the employment of special counsel, they were, of course, entirely free to retain such counsel on behalf of the individual aggrieved applicants. Alternatively, the union officials had standing in their capacity as union officials to seek a declaratory judgment with regard to the issues presented by the board's adoption of the Corporation Counsel's new interpretation of the Heart Bill. *(See, Matter of Tibaldi v Brezenoff,* 65 NY2d 710.) In fact, it is apparent from the pleadings in *Matter of De Milia v McGuire*

(NYLJ, Nov. 20, 1979, at 6, col 1, *supra)* that the principal litigation for which reimbursement is sought was brought by plaintiffs both in their capacity as union officials and as trustees.

In short, even if we were to accept (which we do not) the doubtful claim that the police trustees had standing as trustees to review the determinations of the pension fund, an issue not litigated in *Matter of De Milia v McGuire (supra),* we do not agree that their authority to retain private counsel at the expense either of the city or the fund is "necessarily implied" in order to "allow" them "to properly function" as trustees. *(See, Cahn v Town of Huntington, supra,* 29 NY2d, at 455.)

We are confronted in this lawsuit with a section of the City Charter (§ 395) that specifically prohibits any "officer or agency" from employing any attorney or counsel, except under circumstances not presented here, and as to those circumstances stipulates that the employment of counsel shall be at the expense of the officer or agency. We believe that the controlling rule of law is correctly interpreted as implying an exception to such explicit prohibitory language only under "stringent" circumstances in which, paraphrasing the opinion in *Cahn v Town of Huntington (supra),* such authority is necessarily implied to enable the individual trustees to effect the purposes of their appointment to the board, and to allow them to properly function. We are not persuaded that such an exception is necessarily implied under the circumstances presented here to provide authority for the police trustees to have retained private counsel at the expense of the city or the pension fund.

Accordingly, two orders of the Supreme Court, New York County (Harold Baer, Jr., J.), entered, respectively, on or about December 30, 1985 and September 17, 1986, which granted plaintiffs' motion for summary judgment on liability and directed that plaintiffs recover $105,130 for attorneys' fees in the prosecution of three actions, including the instant one, and in defense of one action, should be reversed, on the law, without costs, the motion for summary judgment denied, and the complaint dismissed.

Ross, J. (concurring). After reviewing the record, I agree that the orders should be reversed, on the law, to deny the plaintiffs' motion for summary judgment, and the complaint dismissed.

However, I cannot join in the majority analysis of this

matter, due to the fact that it contains confusing assumptions, illustrations, and speculation about alternate methods to challenge the Corporation Counsel's legal opinion about the Heart Bill.

Accordingly, I concur in the result only.

SULLIVAN and MILONAS, JJ., concur with SANDLER, J. P.; Ross, J., concurs in a separate opinion.

Two orders, Supreme Court, New York County, entered on December 30, 1985 and September 17, 1986, respectively, unanimously reversed, on the law, without costs and without disbursements, the motion for summary judgment denied, and the complaint dismissed.